**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James POOLE, Sr.,**
**Defendant–Appellant.**

**No. 90–3184.**

United States Court of Appeals,
Tenth Circuit.

April 4, 1991.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan. (Lee Thompson, U.S. Atty.

and Julie A. Robison, Asst. U.S. Atty., with him on the brief), for plaintiff-appellee U.S.

Zygmunt J. Jarczyk, Kansas City, Kan., for defendant-appellant James Poole, Sr.

Before BALDOCK and BRORBY, Circuit Judges, and ANDERSON,[*] District Judge.

ALDON J. ANDERSON, District Judge.

Defendant Poole appeals a jury conviction for possession with intent to distribute approximately 7.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and unlawful possession of a firearm which had been shipped or transferred in interstate commerce in violation of 18 U.S.C. § 922(g)(1). Poole asserts four grounds of error on appeal. First, Poole challenges the sufficiency of the indictment, claiming that it does not allege the specific elements constituting the violation. Second, Poole argues that the trial court erred by admitting certain testimony of prior crack cocaine sales by Poole under Rule 404(b) Fed. R.Evid. Third, Poole claims that the court erred in giving instruction number three stating that the government need not prove the exact date of the crime as long as it showed that the crime occurred on or about the date charged. Finally, Poole argues that the trial court erred in imposing a sentence based on possession of the entire quantity of drugs seized since the evidence established the presence of multiple parties at the premises.

## I.

On January 8, 1990, the Bureau of Alcohol, Tobacco and Firearms ("ATF") served a search warrant at "Lynn's Place," a restaurant operated as a partnership by appellant James Poole, Sr. and codefendant Sylvester Harris. The ATF had been investigating the restaurant for sales of cocaine. ATF undercover agents or confidential informants had purchased crack cocaine from codefendant Harris at the restaurant on

January 5, 1990 and twice on January 8th approximately one to two hours prior to serving the search warrant. Poole was not present during any of these pre-buys made by ATF undercover agents or informants. (Tr.Vol. I, pp. 10–12, 40)

When the search warrant was served on January 8, 1990, Poole was sitting at a booth in the front area of the restaurant and was apprehended after he jumped up and started to run. Several other individuals were also present in the restaurant but Harris was absent. (Tr.Vol. I, pp. 12, 14)

After being advised of his rights, Poole was asked if there were any weapons present. He told the agents that there was a carbine in the back room underneath the bar and that they would probably find his fingerprints on the gun because he had handled it. Upon searching the back room of the restaurant, agents found a .30 caliber carbine underneath the bar along with some matching magazines near the gun. (Tr.Vol. I, pp. 14–18)

Poole also told ATF agents that he had quite a lot of fishing gear in the back room and that all of the gear was his. With the assistance of a drug-sniffing dog, the agents found four miniature cellophane bags containing crack cocaine in a minnow pail among some fishing gear in the back room. While searching the kitchen area of the restaurant, agents found a band-aid box containing 20 bags of crack cocaine behind a wall partition. (Tr.Vol. I, pp. 19–21, 24–25)

Agents recovered $2,190 from Poole's pants pocket and the pocket of a jacket claimed by Poole. The agents also recovered $418 from the person of an employee of the restaurant who was found in the kitchen which included $50 identified as "buy money" from the two pre-buys made by the ATF informant on January 8th. The drug dog alerted positive to each stack of money recovered. (Tr.Vol. I, pp. 27–31)

---

[*] The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

## II.

### A.

Poole's first claim on appeal is that the indictment is insufficient in that it does not allege the specific elements constituting a violation of 18 U.S.C. § 922(g)(1). An indictment is sufficient "if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend, and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense." *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). Count II of the indictment alleges that the defendant, having been convicted of a felony, "did unlawfully possess a firearm ... which had been shipped or transferred in interstate commerce."[1] The relevant portion of § 922(g) provides that it shall be unlawful for any person who has been convicted of a felony to *"possess in or affecting commerce,* any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g) (Supp.1990) (emphasis added).

An indictment is not insufficient merely because it fails to recite the precise language of the statute. The phrase "in or affecting commerce" in § 922(g) was intended by Congress to mean "that the firearm had been at some time, in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977); *see United States v. Conner*, 886 F.2d 984, 985 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1156, 107 L.Ed.2d 1060 (1990). Because the indictment specifically identified the firearm and alleged that it had been shipped or transported in interstate commerce, the indictment was sufficient to place Poole on notice of the charge against him.

Poole also argues that the indictment was insufficient because he could be convicted of two separate crimes under § 922(g)—receiving as well as possessing a firearm shipped or transported in interstate commerce. This claim is without merit. If a subsequent prosecution should occur, Poole could refer to the entire record and not just the indictment to avoid being twice placed in jeopardy for the same offense. *See Staggs*, 881 F.2d at 1530; *United States v. Apodaca*, 843 F.2d 421, 430 n. 3 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). Thus, we conclude that the indictment was sufficient to charge Poole with a violation of § 922(g)(1).

### B.

Poole argues that the trial court erred by admitting the testimony of four ATF confidential informants regarding prior cocaine sales by Poole. Poole claims that the testimony should have been excluded because their testimony was uncertain and unclear as to specific times, places and dates. We review the trial court's decision to admit the testimony for an abuse of discretion. *United States v. Record*, 873 F.2d 1363, 1373 (10th Cir.1989).

The trial court admitted the evidence under Fed.R.Evid. 404(b), which provides:

> **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in con-

---

1. Count II of the indictment charged as follows:
   On or about January 8, 1990, in the District of Kansas, JAMES L. POOLE, SR., defendant herein, a person who has been convicted in the District Court of Wyandotte County, Kansas, on or about October 29, 1982, of involuntary manslaughter, a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Kansas, did unlawfully possess a firearm, that is, an Iver Johnson Model M–1 .30 caliber rifle, serial number AA09289, which had been shipped or transferred in interstate commerce from New Jersey to Kansas. This is in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(1)(B).
   (R.O.A. Doc. 20)

formity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, evidence of prior criminal acts is admissible under Rule 404(b) if it is relevant to something material other than criminal propensity. *United States v. Shepherd*, 739 F.2d 510, 512 (10th Cir.1984).

At trial, four ATF confidential informants testified that they had either purchased crack cocaine from Poole at the restaurant or observed him participate in the sale of crack cocaine at the restaurant. Oliver Todd testified that he had been in Lynn's Place about 100 times and understood that Poole and codefendant Sylvester Harris ran it as a partnership. Todd testified that he had purchased cocaine at Lynn's Place three or four times, the last purchase having occurred about two weeks before the raid. Todd testified that he did not buy cocaine from Poole at Lynn's Place but had bought cocaine from Poole about a year before at another location. He further testified that he had seen Poole collect money from a person who Todd had seen lay drugs on the bar counter for sale. Todd testified that he knew drugs were sometimes kept in the back part of the restaurant and that Poole kept a gun behind the cash register. (Tr.Vol. I, pp. 62–69)

Charles Johnson testified that he had purchased crack cocaine at Lynn's Place in late 1989 or early 1990 from both Poole and Harris, the last purchase having been about two months before the raid. Johnson testified that he had purchased crack cocaine from both Poole and Harris about 10 to 15 times and that the transactions routinely occurred in the front part of the restaurant by the counter or in the hallway. He testified that Poole would sometimes have the crack cocaine on his person, but at other times, the cocaine was behind the counter or on the person of an employee. He testified that he had seen Poole sell crack cocaine to others approximately 50 times. He stated that Poole was at Lynn's Place frequently but Poole often brought crack cocaine to his workers and left the

crack cocaine in their charge. (Tr.Vol. I, pp. 92–102)

Robert Haywood testified that he had been at Lynn's Place three or four times in late 1989 with other people who were purchasing crack cocaine. He had seen these people purchase from both Harris and Poole. Haywood thought that he had seen Poole sell crack cocaine twice. (Tr.Vol. I, pp. 112–116)

Kris Kramer testified that he had purchased crack cocaine at Lynn's Place many times and had purchased directly from Poole at least five times. He testified that these transactions had occurred from approximately the summer of 1989 through one month before the raid. (Tr.Vol. I, pp. 128–130)

After the testimony of Todd and Johnson, but before Haywood and Kramer testified, the court gave the following cautionary instruction:

Members of the jury, I want to give you a cautionary instruction now because we have had some testimony by this individual and another one this afternoon about other alleged unlawful acts by this defendant other than those with which he is charged. He is charged only with possession with intent to distribute the 7.8 grams on January 8th, and also the possession of the gun on January 8th. And obviously this other testimony relates to other instances other than these two charges. I want to give you this instruction that this evidence has been admitted only for the limited purpose of showing intent and knowledge, if any, of the defendant with respect to the specific offenses with which he is charged.

Such evidence of other unlawful acts of a like or similar nature may not be considered by you as proof that the defendant is automatically guilty of these specific offenses with which he is charged, but it is relevant as to any question of intent or knowledge which are elements of these two crimes, and it's only for that limited purpose it has been admitted. And the court will more fully

instruct you on this at the conclusion of the case.

(Tr.Vol. I, pp. 108–109) The court reiterated this limiting instruction when it instructed the jury at the close of the trial.[2]

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court reviewed the proper application of Rule 404(b) to "similar act" evidence. The Court rejected the approach taken by some circuits that required the trial court to make a preliminary finding by a preponderance of the evidence that the defendant did in fact commit the prior act before the evidence may be presented to the jury. The Court reasoned that such a requirement "is inconsistent with the structure of the Rules of Evidence and with the plain language of Rule 404(b)." *Id.* at 687, 108 S.Ct. at 1500. The Court noted that Rules 401 and 402 establish the broad proposition that relevant evidence is admissible unless the Rules provide otherwise while Rule 403 allows the trial judge to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* The Court expressed concern that unduly prejudicial evidence might be introduced under Rule 404(b) but concluded that protection against such unfair prejudice is provided by the Federal Rules of Evidence.

Following the framework for avoiding undue prejudice outlined in *Huddleston*, this Circuit has ruled that the defendant is presumed to be protected against undue prejudice if the following four requirements are met:

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.1991).

In the instant case, the trial court's decision to admit the evidence satisfies all four requirements for protection against undue prejudice. First, the evidence was offered for a proper purpose under Rule 404(b), namely to show that Poole knew of the cocaine that was seized at the restaurant and that he had the intent to distribute it. The testimony of the four ATF informants suggested that Poole did have knowledge of cocaine sales being made at the restaurant and had participated in the sales.

Second, the evidence admitted under Rule 404(b) was relevant. With respect to Rule 404(b), "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston*, 485 U.S. at 689, 108 S.Ct. at 1501. The testimony of the ATF informants was relevant because it concerned prior sales of the same drug, crack cocaine, by this defendant. The testimony allowed the jury to reasonably conclude that Poole did sell or involve himself in the sale of cocaine at Lynn's Place. Thus, there was a logical relationship between the other illegal acts and the charged crime. In addition, the other acts were relevant because they were close in time to the January 8th raid. Although the testimony of these witnesses was not specific as to time and date, each witness was certain of the time frame in which they had witnessed Poole sell or involve himself in the sale of crack cocaine.

2. The court instructed the jury as follows:
    There has been evidence presented which relates to other possible unlawful acts and conduct of the defendant, other than the specific offenses with which he is charged and is on trial. You are instructed that this evidence has been admitted only for the limited purpose of showing intent and knowledge, if any, of said defendant with respect to the offenses with which he is charged. Such evidence of other unlawful acts of a like or similar nature may not be considered by you as proof the defendant is guilty of the specific offenses charged, but is relevant and may be considered by you only for the limited purposes I have just stated.
    (R.O.A. Doc. 37, Instruction 17)

■ Third, the district court determined under Rule 403 that the probative value of the testimony of the ATF informants was not substantially outweighed by its potential for unfair prejudice.[3] The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value. *United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989); *United States v. Esch,* 832 F.2d 531, 535 (10th Cir.), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988).

At trial, Poole argued that he was not in possession of the cocaine found at the restaurant during the raid and that he did not have the intent to distribute it. This defense placed Poole's intent at issue and required the government to prove Poole's specific intent beyond a reasonable doubt. The testimony of the ATF informants had strong probative value and suggested that Poole did possess the cocaine with intent to distribute it. The potential for unfair prejudice of the testimony was limited by a cautionary instruction given at the time the evidence was being introduced. We do not find that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See Huddleston,* 485 U.S. at 688–89, 108 S.Ct. at 1500–01 ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence.").

The final requirement of admissibility under Rule 404(b) was satisfied when the trial court instructed the jury, while the evidence was being admitted, to consider the testimony only for the limited purpose of showing the knowledge or intent of the defendant.[4] This cautionary instruction, in combination with the court's instruction at the conclusion of the evidence was sufficient to protect Poole from unfair prejudice. *See United States v. Pettit,* 903 F.2d 1336, 1339 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990).

## C.

■ The court's instructions to the jury included the familiar "on or about" instruction which states that the evidence need only show that the offenses were committed on a date reasonably near the date alleged in the indictment.[5] Poole argues that because of the "similar act" testimony previously admitted under Rule 404(b), this instruction was confusing and misleading and allowed the jury to convict Poole of prior crimes with which he was not charged.

The "on or about" instruction which Poole challenges has been approved by this Circuit on numerous occasions. *See, e.g., United States v. Phillips,* 869 F.2d 1361, 1369 (10th Cir.), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989); *United States v. Smith,* 806 F.2d 971, 974 (10th Cir.1986); *Tafoya v. United States,* 386 F.2d 537, 539 (10th Cir.1967), *cert. denied,* 390 U.S. 1034, 88 S.Ct. 1433, 20 L.Ed.2d 294 (1968). We find no support for the claim that the instruction could have misled the jury. The trial court clearly instructed the jury, at the time the testimony was offered and at the conclusion of the evidence, that Poole was not charged

---

**3.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

**4.** Rule 105 provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Fed.R.Evid. 105.

**5.** The court instructed the jury as follows:

You will note the Indictment charges that the offenses were committed "on or about" a certain date. It is not necessary that the proof establish with certainty the exact date of the alleged offenses. It is sufficient if the evidence shows beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

(R.O.A. Doc. 37, Instruction 3)

with any of the prior drug sales, but only in connection with the January 8th incident.

### D.

■ Finally, Poole claims that the district court erred in imposing a sentence based upon an offense level calculated by the entire amount of cocaine located on the premises since there were multiple parties present at the restaurant at the time the cocaine was seized. Poole argues that because the court did not instruct the jury to determine the specific quantity of crack cocaine in his personal possession, it was clear speculation for the court to attribute the entire 7.8 grams of cocaine to him.

■ At the outset, we note that a specific determination of the amount of a controlled substance possessed by the defendant is not required for a conviction under 21 U.S.C. § 841(a)(1).[6] The defendant need only possess any measurable quantity of a controlled substance under circumstances which establish his intent to distribute the substance. The quantity of a substance possessed by the defendant becomes relevant only in computing a base offense level under the sentencing guidelines. For sentencing purposes, the trial court's finding about the quantity of drugs implicated by the crime are factual findings reviewed under the "clearly erroneous" standard. *United States v. Trujillo*, 906 F.2d 1456, 1466 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990).

■ Possession of narcotics may be either actual or constructive. Constructive possession of property requires that the individual knowingly hold the power and ability to exercise dominion and control over the property. *United States v. Culpepper*, 834 F.2d 879, 881 (10th Cir.1987); *United States v. Massey*, 687 F.2d 1348, 1357 (10th Cir.1982). Although none of the crack cocaine was found on his person, Poole was in direct control of the restaurant at the time the search warrant was served. The entire 7.8 grams of crack cocaine was located in areas of the restaurant which were generally closed to the public yet readily accessible to Poole and his employees. Several individuals may jointly possess a single quantity of narcotics. *Culpepper*, 834 F.2d at 882; *Massey*, 687 F.2d at 1354. It was not necessary to determine that Poole was in exclusive possession of a specific quantity of cocaine seized at the restaurant.

■ Under the sentencing guidelines, the total quantity of drugs that were part of the same course of conduct or part of a common scheme or plan as the count of conviction are to be included in calculating the base offense level. *United States v. Rutter*, 897 F.2d 1558, 1562 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). The evidence suggested that Poole and Harris operated the restaurant as a partnership and that crack cocaine was an unpublished, but popular menu selection. Because the evidence showed that both Poole and Harris sold crack cocaine at the restaurant and since the restaurant was operated as a partnership, the court could reasonably conclude that the 7.8 grams of crack cocaine seized in the raid was part of a common scheme or plan and was properly attributable to Poole for sentencing purposes.

For the reasons discussed above, the judgment is AFFIRMED.

---

**6.** Section 841 provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 841(a)(1) (1988).