UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward P. REDDECK, Defendant–
Appellant.

No. 93–4112.

United States Court of Appeals,
Tenth Circuit.

April 26, 1994.

Robert C. Lunnen, Special Asst. U.S. Atty. (Scott M. Matheson, Jr., U.S. Atty.; Richard N.W. Lambert, Asst. U.S. Atty., with him on the brief), Salt Lake City, UT, for plaintiff-appellee.

Jerome H. Mooney, III (Wendy M. Lewis with him on the brief) of Mooney & Associates, Salt Lake City, UT, for defendant-appellant.

Before BRORBY and EBEL, Circuit Judges, and COOK,* District Judge.

* The Honorable H. Dale Cook, Senior United States District Judge for the Eastern, Northern, and Western Districts of Oklahoma, sitting by designation.

BRORBY, Circuit Judge.

Mr. Edward Reddeck was convicted of multiple counts of mail fraud, under 18 U.S.C. § 1341, and one count of using a fictitious and false name, under 18 U.S.C. § 1342, in connection with his operation of a mail-correspondence university in Salt Lake City, Utah. As part of the sentence, he was ordered to serve forty-three months of imprisonment. Mr. Reddeck appeals both his conviction and sentence. We affirm the conviction, but remand for resentencing.

## BACKGROUND

The charges arise from operation of North American University (NAU) in Salt Lake City, Utah, and Westlake Village, California, between 1989 and 1992. Mr. Reddeck has organized numerous nontraditional universities in the past. In the late 1970s, Mr. Reddeck organized American International University in California and was convicted of mail fraud while promoting mail-correspondence universities. American International University moved to Arizona, then to Missouri. While in Missouri, Mr. Reddeck attempted to establish the University of North America but was prevented by a state court injunction issued in 1989. About this time, Mr. Reddeck established NAU in Salt Lake City, Utah. Ultimately, the Utah address was used as a mail drop and Mr. Reddeck ran NAU from his office in California.

NAU attracted prospective students through advertisements in national newspapers and magazines. The advertisements encouraged prospective students to send for a catalog of courses and to submit a record of life experiences. A fundamental tenet of Mr. Reddeck's educational philosophy is that people should receive credit for life experience toward a college degree. If accepted by NAU, a student received a workbook explaining different areas of study and describing classes in each area. Students were encouraged to challenge a class, and thereby receive NAU credit, by writing a paper showing their competence in a particular area drawn from life experience.

The catalog stated NAU was an accredited institution and displayed a copy of the school's certificate of accreditation from the International Accreditation Association (IAA). Mr. Reddeck established IAA solely to "accredit" his universities, and the association has no relation to recognized accreditation institutions. The catalog also listed numerous faculty, many of whom later testified were never offered employment by Mr. Reddeck. NAU did employ at least one faculty member, with training in political science, who was asked to grade life experience papers in such diverse areas as aeronautics, psychology, and engineering. Approximately 458 students were enrolled at NAU between 1989 and 1992. Tuition obligations ranged from over $1,500 for an Associate of Arts & Science degree to over $3,000 for a combined Master's/Doctoral degree.

Mr. Reddeck was indicted by a federal grand jury in Utah in January 1992 and arrested soon after. At his arraignment, Mr. Reddeck initially indicated displeasure with appointed counsel but later proposed and accepted appointment of current counsel. The government moved for an evaluation of defendant's competency to stand trial. Following competency hearing on the results of appointed evaluations, the court found Mr. Reddeck competent. At trial, Mr. Reddeck's primary defenses to the fraud charges were good faith belief and lack of fraudulent intent. In March 1993, the jury convicted Mr. Reddeck of twenty-two counts of mail fraud and one count of fraudulently using a fictitious name. He was sentenced to forty-three months imprisonment, three years of supervised release and was ordered to pay $19,135 restitution and a special assessment fee of $1,100. Mr. Reddeck timely appeals and raises several issues including sufficiency of the evidence, improper admission of Fed. R.Evid. 404(b) evidence, denial of his constitutional right to self-representation, and sentencing error.

## I.

Mr. Reddeck initially argues the government offered insufficient evidence of fraudulent intent necessary for a mail fraud

conviction under 18 U.S.C. § 1341.[1] He presented testimony from former colleagues of his good faith belief in a religious mission and in the validity of nontraditional education. He contends this testimony and expert testimony that his actions were the result of delusional disorders show he lacked the intent to defraud.

To evaluate a sufficiency of the evidence challenge to a jury verdict against the defendant, we consider the evidence and all reasonable inferences in the light most favorable to the government. *United States v. Mann,* 884 F.2d 532, 535 (10th Cir.1989). Given this favorable light, the relevant question is whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Hollis,* 971 F.2d 1441, 1447 (10th Cir.1992) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). "We accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses." *United States v. Davis,* 1 F.3d 1014, 1017 (10th Cir.1993).

▌ In an 18 U.S.C. § 1341 mail fraud offense, the government must prove (1) a scheme to defraud, and (2) the mailing of a letter or other relevant item for the purpose of executing the scheme. *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954); *United States v. Gamble,* 737 F.2d 853, 855 (10th Cir.1984). Mr. Reddeck only challenges proof of the first element and we hold the jury had sufficient evidence to find a scheme to defraud. A scheme to defraud is conduct that is " 'intended to or is reasonably calculated to deceive' " ordinary people. *Mann,* 884 F.2d at 535 (quoting *United States v. Washita Constr. Co.,* 789 F.2d 809, 817 (10th Cir.

1986)). The schemer's indifference to the truth of statements can amount to fraudulent intent "[a]nd even though a defendant may firmly believe in his plan, his belief will not justify baseless or reckless representations." *United States v. Themy,* 624 F.2d 963, 965 (10th Cir.1980) (citations omitted).

The government showed NAU catalogs listed faculty who had no association with the enterprise, and NAU employees testified Mr. Reddeck mislead them to believe faculty existed in another site. The government also demonstrated NAU catalogs erroneously referred to a Salt Lake City address for the university when the enterprise was actually run from California. A former employee testified Mr. Reddeck advised her not to tell prospective students of the California office because "[i]t sounds fishy." Third, the government elicited admissions from Mr. Reddeck that the source of accreditation for NAU was a corporation controlled by Mr. Reddeck with essentially no employees. Students who inquired further about the accrediting corporation were directed to a Washington D.C. phone number staffed solely by a receptionist provided to Mr. Reddeck as part of his commercial lease. In response to Mr. Reddeck's good faith defense, the government referred to a prior injunction against Mr. Reddeck in connection with his operation of a similar university in Missouri. Mr. Reddeck testified he was aware of the injunction while he solicited students for his Utah operations.

Despite evidence of Mr. Reddeck's mental state and beliefs, the jury heard testimony, at times from Mr. Reddeck personally, that NAU students were misinformed as to the location of NAU, its accreditation, and its faculty. A reasonable juror could have inferred Mr. Reddeck held at least a reckless indifference to accurately presenting his uni-

---

1. Mr. Reddeck also challenges indirectly the fictitious name charge. He argues, if we find a lack of intent as to mail fraud, we cannot find the requisite intent for a fictitious name conviction. We disagree. Fraud by a fictitious name, 18 U.S.C. § 1342, is analyzed in the same manner as mail fraud. The government must prove a fraudulent scheme and an act in violation of the relevant section. There is ample evidence of the fictitious name violation independent of the mail fraud charges. Mr. Reddeck admitted at trial he used the "pen name" of "J.W. Anderson" in responding to telephone calls from students. He told employees he was authorized to use the name to sign correspondence. The name was used in course catalogs to refer to a faculty advisor and university administrator. The sufficiency of this evidence is not limited by our analysis of the mail fraud charges.

versity as an accredited, well-staffed university. The jury's verdict does not lack sufficient evidence.

## II.

■ Mr. Reddeck next argues the trial court improperly admitted "other acts" evidence in violation of Fed.R.Evid. 403 and 404(b). The trial court has broad discretion to examine whether the probative value of evidence substantially outweighs the danger of unfair prejudice. *United States v. Poole,* 929 F.2d 1476, 1482 (10th Cir.1991). We review challenges to admissibility of evidence solely for abuse of discretion. *United States v. Joe,* 8 F.3d 1488, 1495 (10th Cir.1993) (Rule 404(b) evidence), *cert. denied,* — U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1944); *United States v. Martinez,* 938 F.2d 1078, 1082 (10th Cir.1991) (Rule 403 evidence).

■ In a pretrial hearing, the government proffered two documents intended to show Mr. Reddeck had prior awareness of the illegality of his conduct in running similar universities. The first document, a default Missouri state court injunction, was entered against Mr. Reddeck after he attempted to open a university in that state. The government contended the Missouri injunction served as notice to Mr. Reddeck that a similar university operation—also lacking faculty and accreditation—violated the law. Counsel for Mr. Reddeck objected and claimed the default nature of the injunction left his client unable to challenge prejudicial statements found in the documents. The trial court thus conditioned admission on a showing that Mr. Reddeck actually knew of the injunction while operating NAU.

At trial, Mr. Reddeck admitted on cross-examination he was aware of the Missouri injunction while operating NAU. He at-tempted to open the Missouri university a few years prior to opening NAU in Utah. Also, a former NAU employee testified he previously asked Mr. Reddeck about the coincident injunction and pleaded with Mr. Reddeck to disassociate himself from the Missouri enterprise. After a conference on the issue, the court specified the document would come in solely for notice, intent, and whether defendant's subsequent acts were innocent or mistaken. The court gave a limiting instruction to the jury at the time of admission [2] and again at the conclusion of the case.

The second document proffered by the government was a prior indictment and conviction for mail fraud in California related to Mr. Reddeck's promotion of other mail-correspondence universities in Texas and California. The court initially considered this evidence during its pretrial hearing and the government contended, again, the prior conviction put defendant on notice that a similarly run operation was considered fraudulent and criminal. Defense counsel's objection focused on the breadth of allegations found in the eight-count indictment. Defense noted the indictment led to a conviction only on the first count, hence the alleged acts of the indictment may have been broader than the final findings of fact. In response, the government limited its evidence solely to a certified copy of count one of the indictment.

During trial, the court held a conference to specifically examine the prerequisites to a Rule 404(b) admission. The court found the document had relevance to the Rule 404(b) purpose of intent of the defendant and as rebuttal to the good faith defense, and found the probative value of the document outweighed potential prejudice. The indictment and conviction were admitted upon objection

2. The instruction provides:
   Members of the jury, let me give you an instruction, and please heed this, as I know you will, very carefully.
   Attached to that document that is being introduced now is a default finding in a judicial proceeding from the State of Missouri involving the defendant.
   You are instructed that you may not consider the results of that proceeding, where only one side of the evidence was presented, as proof that any of the acts alleged or described in the documents of that proceeding occurred.
   You may only consider in considering that document from the State of Missouri what effect, if any, the knowledge of that proceeding had on Mister—or had on the decisions and acts of Mr. Reddeck if you find from the evidence of this case that at some time he became aware of that proceeding in the State of Missouri.

by defense counsel, and a limiting instruction was given at the conclusion of trial.

Mr. Reddeck challenges the admission of the other acts evidence on various grounds. First, he argues the evidence was offered for the improper purpose under Rule 404(b) of proving a criminal propensity. Second, Mr. Reddeck contends the trial court's decision is directly in conflict with our holding in *United States v. Cardall,* 885 F.2d 656 (10th Cir. 1988). Third, he argues the evidence was unduly prejudicial in violation of Rule 403. Finally, Mr. Reddeck challenges the trial court's Rule 404(b) instruction regarding the California indictment.[3] We find no abuse of discretion.

■ Our review of Rule 404(b) evidentiary challenges follows the four procedural safeguards delineated in *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

> (1) [T]he evidence must be offered for a proper purpose under Rule 404(b); (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination that the probative value of the similar acts evidence is not substantially outweighed by its potential for unfair prejudice; and (4) under Rule 105, the trial court must, upon request, instruct the jury that the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Joe,* 8 F.3d at 1495; *see Huddleston,* 485 U.S. at 691–92, 108 S.Ct. at 1502.

Mr. Reddeck's challenge to proper use of the "other acts" evidence misses the mark. Rule 404(b) allows evidence of other crimes or acts to prove intent, knowledge, or absence of mistake or accident. The trial court conducted several hearings and conferences to clarify the use of the two pieces of evidence and explicitly found them relevant to the defendant's state of mind, to notice of the illegality of similar conduct, to absence of mistake, and as rebuttal of defendant's good faith defense.

Next, Mr. Reddeck asserts the relevancy prong was not met because the Missouri injunction was entered in default and the California indictment referred to activities that may not have been ultimately proven in the final conviction. This assertion also misses the mark. In *Cardall,* we noted as a threshold matter "other acts" evidence satisfies the relevancy prong " 'only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.' " *Cardall,* 885 F.2d at 671 (quoting *Huddleston,* 485 U.S. at 689, 108 S.Ct. at 1501) (emphasis not in original). *Cardall* was concerned with linking evidence of conduct by co-conspirators to a defendant. *Id.* at 671–72; *see United States v. Pettit,* 903 F.2d 1336, 1338–39 (10th Cir.) (prior drug sales by co-defendant linked to defendant because of his direction and assistance), *cert. denied,* 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990). In this case, the government directly linked Mr. Reddeck to both the Missouri injunction and the California mail fraud conviction. Mr. Reddeck testified he operated the Missouri university up to the time of that state's injunction. Mr. Reddeck was convicted and served his sentence for the California mail fraud. Both documents were relevant to the defendant's asserted defense of a good faith belief in his activities.

Appellant's third argument essentially asks us to reexamine the Rule 403 balancing. We need not since, in addition to the deference we grant trial courts in Rule 403 determinations, satisfaction of the four *Huddleston* fac-

---

**3.** Mr. Reddeck also asserts a violation of his Sixth Amendment right to confrontation. We find some difficulty grasping Mr. Reddeck's precise argument. Apparently he believes the default injunction and prior indictment were based on out-of-court statements to which he was denied adequate cross-examination. During the current trial, however, the documents were offered as evidence of Mr. Reddeck's intent, or more precisely, lack of good faith in conducting NAU. This is not a hearsay purpose. Therefore, we need not undertake the two-part Sixth Amendment analysis of evidence falling within a hearsay exception. *See Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *United States v. Johnson,* 971 F.2d 562, 572–73 (10th Cir.1992).

Generally, the Sixth Amendment Confrontation Clause must be harmonized with competing interests in the criminal process, but does not require the exclusion of every out-of-court statement offered without the opportunity for cross-examination. *See Myatt v. Hannigan,* 910 F.2d 680, 682–83 (10th Cir.1990). We find the admission of official court documents does not offend the deeply rooted right of confrontation.

tors carries a presumption that a defendant is protected from undue prejudice. *United States v. Poole,* 929 F.2d 1476, 1481–82 (10th Cir.1991); *see Huddleston,* 485 U.S. at 688, 691, 108 S.Ct. at 1500, 1502 (within a Rule 404(b) analysis, the trial court is expected to find the evidence would not violate Rule 403). Here the trial court explicitly made a finding the probative value of the California indictment outweighed its prejudicial effect. Although less explicit, the court's rejection of defense counsel's numerous and strident objections to the prejudicial effect of the Missouri injunction reflect an implicit balancing. Introduction of the Missouri injunction was immediately followed by a limiting instruction to the jury. *See supra* n. 2. We cannot say admission of either document was unfairly prejudicial.

Mr. Reddeck finally argues the instruction regarding the California indictment is impermissibly broad. Appellant quotes a paragraph of the instruction in which seven of the eight proper Rule 404(b) purposes are listed. In reviewing a challenge to jury instructions, however, they must be read in their entirety. *United States v. Denny,* 939 F.2d 1449, 1454 (10th Cir.1991) (citing *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). We will reverse "only when such error is prejudicial in light of the entire record." *Id.* (citing *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271 n. 19 (10th Cir.1988)). We have disfavored "laundry list" limiting instructions that merely list the text of Rule 404(b). *United States v. Doran,* 882 F.2d 1511, 1525 (10th Cir.1989). *But see Joe,* 8 F.3d at 1496 (*Doran* is not a per se rule). The instruction given by the court in this case does not stoop to this level, however. Appellant neglects to disclose the trial court crafted the instruction in large part to respond to counsel's concern about unproven

allegations in the indictment.[4] It was worded to counteract the specific areas of potential confusion and prejudice to the defendant, and did not merely recite the text of Rule 404(b). In the context of the entire record, we find no reversible error.

### III.

Mr. Reddeck asserts the trial court improperly denied his right to self-representation. A defendant has a constitutional and statutory right to waive his right to counsel. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (right found in the Sixth Amendment); 28 U.S.C. § 1654. Waiver of the right to counsel must be made "knowingly and intelligently" and "made with eyes open" as to the dangers and disadvantages of self-representation. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *see United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware ... and is fully informed of the risks of proceeding *pro se.*" *Willie,* 941 F.2d at 1388 (citations omitted).

Before this inquiry is triggered, however, the defendant must "clearly and unequivocally" assert his election of self-representation. *United States v. Treff,* 924 F.2d 975, 978–79 (10th Cir.), *cert. denied,* 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). We have repeatedly shown concern with the use of the right to waive counsel as a "cat and mouse" game with the courts. *See id.* at 979; *United States v. Padilla,* 819 F.2d 952, 959 (10th Cir.1987). Once the defendant has elected either to waive appointed counsel or waive the constitutional right to defend himself, he does not have an unlimited right to thereafter change his mind and seek the

---

4. Just prior to the court's description of proper purpose under Rule 404(b), the instruction reads:
   In considering the defendant's mail fraud conviction in 1977 as it may bear on the issues described in the next instruction, you should also have in mind that defendant's conviction by the court on that charge was not a finding by the court that all allegations set forth in the fairly lengthy indictment in that case were true. The finding of guilt by the court in the 1977 indictment required that the court find

all elements of the crime of mail fraud had been committed. Those elements are the same as are set forth in Instruction No. 17 in this case. However, other than the court being required to make that finding, the guilty verdict in the 1977 case does not establish the truth of all the allegations in the indictment, since the elements of the offense could be supported by proof of only one of the charged allegations.

other path of representation. *See United States v. Merchant,* 992 F.2d 1091, 1095 (10th Cir.1993); *Willie,* 941 F.2d at 1391.

■ When initially asked during his arraignment whether he elected to waive counsel, Mr. Reddeck explained he generally mistrusted lawyers but had yet to make a final decision. The court decided to advise Mr. Reddeck of the risks of self-representation despite the ambiguous response. The court reviewed the charges, the elements of the charges and their maximum sentences, the potential difficulty in understanding Federal Rules of Evidence and Sentencing Guidelines, and the defendant's general obligation to observe the standards set by the court. Mr. Reddeck indicated he understood the disadvantages with self-representation and proposed the appointment of Mr. Mooney, current defense counsel. The court later entered an order of appointment for Mr. Mooney as counsel for the defendant.

Counsel assisted Mr. Reddeck at his competency hearing where the court determined Mr. Reddeck was competent to stand trial. In response to questions about Mr. Reddeck's ability to assist in his defense, mental health experts expressed concern that Mr. Reddeck's possible disorders would interfere with his ability to accept advice from defense counsel at odds with his own theories of defense. The court specifically asked Mr. Reddeck whether he was "getting along" with current counsel and whether he could follow counsel's advice. Mr. Reddeck responded affirmatively.

Eight months after his arraignment and three months after his competency hearing, however, Mr. Reddeck filed a pro se motion to dismiss counsel based on claims of ineffective assistance. He primarily complained defense counsel failed to follow his instructions to include additional theories of defense. In this motion, it is unclear whether Mr. Reddeck is seeking appointment of another counsel or requesting right to self-representation. The court, denying the motion, found allegations in the motion to be false and found no indication of ineffective assistance of counsel. Mr. Reddeck later filed a second motion seeking dismissal for ineffective assistance of

counsel and appointment of new counsel, which was also denied by the court.

■ We review a district court's refusal to substitute counsel for an abuse of discretion. *Merchant,* 992 F.2d at 1095 (citing *United States v. Johnson,* 961 F.2d 1488, 1490 (10th Cir.1992)). One standard for allowing substitution of counsel is defendant's showing of good cause for dissatisfaction with current counsel, such as a complete breakdown of communication or other irreconcilable conflict. *Johnson,* 961 F.2d at 1490; *see United States v. Burson,* 952 F.2d 1196, 1198–99 (10th Cir.1991) (denial of new appointment and retention of appointed counsel as standby counsel proper when defendant failed to show appointed counsel was ineffective), *cert. denied,* —— U.S. ——, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992). Here, the district court found appointed counsel "a highly talented and competent attorney ... [who] has vigorously pursued the representation of [Mr.] Reddeck and is continuing to do so." Mr. Reddeck offers no additional indication of good cause for dissatisfaction with defense counsel.

The record shows Mr. Reddeck knew of the risks of self-representation and initially declined to "clearly and unequivocally" elect waiver of counsel. Ambiguously, he later moved to dismiss defense counsel, the district court was within its discretion to refuse substitution of counsel absent a showing of good cause. Mr. Reddeck has failed to show a denial of his right to self-representation.

## IV.

■ Finally, Mr. Reddeck challenges the district court's eight point sentencing enhancement based on an estimated loss between $500,000 and $1 million pursuant to U.S.S.G. § 2F1.1(b)(1)(I).[5] A district court's factual determination of loss under § 2F1.1 is reviewed under a clearly erroneous standard, but the factors the court may consider are reviewed de novo. *United States v. Fox,* 999 F.2d 483, 485 (10th Cir.1993) (citing *United States v. Gallegos,* 975 F.2d 710, 712 (10th Cir.1992)). Sections 2F1.1 and 2B1.1 of the guidelines and accompanying Commentary are designed to gauge the severity of a

---

5. The district court adopted the 1988 edition of the sentencing guidelines. Criminal conduct of

the defendant occurred between 1989 and 1992, and sentencing took place in May 1993. Al-

particular offense. *United States v. Lara,* 956 F.2d 994, 998 (10th Cir.1992). A defendant's base offense level is adjusted by the actual or intended loss, depending on which is greater. *See United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991). The government bears the burden, by a preponderance of the evidence, of proving the victims' losses when used as a sentencing enhancement. *See United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990); *cf. United States v. Brewer,* 983 F.2d 181, 185 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993) (government bears same burden in proving victim loss when seeking restitution).

The district court held an evidentiary hearing to evaluate losses caused by NAU operations once both the government and Mr. Reddeck objected to loss calculations proposed in the presentence report. Testimony centered on the calculation of deposits made into a bank account held in the name of North American University between the indicted violation period of January 1989 to June 1991. Checks with recognizable student signatures payable to "NAU" or "North American University" totaled over $507,000 during the time period. In addition, deposits of approximately $90,000 were identified with the same payees but with illegible signatures.

As an additional source of loss, a government investigator estimated continued revenue flow into the NAU bank account between June 1991 and January 1992, just prior to Mr. Reddeck's arrest. ʿimilar deposit slip information was not available, so the estimate relied entirely on the assumption that revenue would continue at the same rate as the previous two years. A low revenue estimate of $100,000 to $120,000 was given for the second half of 1991. On these figures, the government argued Mr. Reddeck caused losses well in excess of $700,000. The district court, observing that the calculations did not control for refunds to students or possible double counting of insufficient funds checks, adopted the more conservative figure of $575,000. Under either estimate the resulting sentencing enhancement is the same, however.

though initially objecting to the presentence report use of 1988 guidelines, the government does

The court rejected Mr. Reddeck's arguments that (1) aggregate testimony of individual students is the required manner for proving actual losses and (2) losses should be reduced by the "satisfaction" some students retain despite knowledge of the fraud. Mr. Reddeck raises essentially the same arguments on appeal.

The calculation of actual or intended loss need not be exact. "The court is not expected to identify each victim and the loss he suffered to arrive at an exact figure." U.S.S.G. § 2F1.1, comment. (n. 8) (1988). Mr. Reddeck's argument that the government's proof of loss must be restricted solely to the testimony of dissatisfied students is contrary to the clear language of the Guidelines. We find no fault with the district court's estimation of the gross revenues received by NAU, including the assumption of continuing revenues received between June 1991 and January 1992. The guidelines provide estimates may be based "on more general factors, such as the nature and duration of the fraud and the revenue generated by similar operations." *Id.* The court's thoughtful questioning of the government investigator leaves us secure no clearly erroneous estimation of gross losses to students was reached.

■ Mr. Reddeck's second argument poses more difficulty, however. Several students testified they were proud of their accomplishments from self-study and continue to place great value on their NAU degrees. Although Mr. Reddeck's victims certainly deserve the fruits of their personal effort, these estimations are not useful for sentencing purposes. We agree with the district court, the guidelines do not provide for an abstract factoring of a victim's residual and subjective "satisfaction." Calculation of lost value requires an objective standard, usually measured by the "fair market value." *See* U.S.S.G. § 2B1.1, comment. (n. 2).

We have also held loss should be calculated as "the net value, not the gross value, of what was taken." *Smith,* 951 F.2d at 1167; *United States v. Gennuso,* 967 F.2d 1460, 1462 (10th Cir.1992); *accord United States v.*

not appeal this issue.

*Schneider,* 930 F.2d 555, 558 (7th Cir.1991). In *Gennuso,* we adopted an "out of pocket" method for calculating net loss: the difference between the value paid by the victim and the value received. *Gennuso,* 967 F.2d at 1462. Calculation of value received was also governed by an objective fair market value analysis. We stressed, however, a district court is free to use other methods, depending on the requisites of the case, to adequately calculate loss. *Id.* at 1463.

Here, the court's method is unclear, therefore we are uncertain if net loss was determined. The court, using the "out of pocket" method, could have compared the value of tuition payments made to NAU against the value of what students received, a degree of dubious nature. If the court implicitly valued the resulting degree as worthless then its calculations of gross tuition received by Mr. Reddeck's bank accounts would properly reflect net losses. During the evidentiary hearing, counsel for the government opined the total value of Mr. Reddeck's product was one $2.50 three-ring binder containing course descriptions, commonly available at public libraries, and "whatever the paper of [NAU] diplomas were worth." R. Vol. IX, at 31. The government did not support this opinion with testimony, however, or provide other evidence as to the minimal fair market value of an unaccredited degree.

It may be the market value of such a degree is zero or *de minimis,* but without sufficient evidence in the record, we cannot conclude the government demonstrated the net loss to students by a preponderance of the evidence. *See United States v. Johnson,* 941 F.2d 1102, 1114–15 (10th Cir.1991) (remanding for fair market valuation under § 2B1.1 where valuations in presentence report and sentencing hearing unclear). Although the trial transcript reveals comments of dissatisfaction from several students, these are no less subjective estimates than the testimony of satisfied students elicited by the defense. On remand, the district court should supplement its factual findings as to gross losses paid by students to NAU with findings as to the residual fair market value of an unaccredited NAU degree.

6. Mr. Reddeck's pro se motion to discipline and sanction the government's attorney, plaintiff's attorney, and their supervisors for contempt of

## CONCLUSION

Mr. Reddeck's strongly held beliefs in his mission of promoting nontraditional universities does not relieve his responsibility to be truthful in pursuing students. Testimony that he knew of the falsity of representations made to students sufficiently supports his conviction on multiple counts of mail fraud and fraudulent use of a fictitious and false name. To contradict Mr. Reddeck's primary defense of a good faith belief, the government satisfied the onerous requirements for introducing other acts evidence. In sentencing Mr. Reddeck, however, we cannot conclude the government properly demonstrated the net loss to students. Accordingly, we **AFFIRM** the conviction, but **REVERSE** and **REMAND** for resentencing consistent with the opinion.[6]

court, obstruction of justice, and for perpetrating constructive fraud on the court is denied.