94 F.3d 656
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES, Plaintiff-Appellant,
v.
Gregory D. COSBY, Defendant-Appellee.
 No. 95-3142.
 United States Court of Appeals, Tenth Circuit.
 Aug. 15, 1996.
 
 1
 Before PORFILIO and HOLLOWAY, Circuit Judges, and HOLMES, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 HOLMES, District Judge.
 
 
 4
 Gregory D. Cosby was convicted on one count of attempted bank robbery in the United States District Court for the District of Kansas. Mr. Cosby challenges his conviction on four grounds: (1) the trial court erroneously admitted evidence of his three prior bank robbery convictions; (2) the trial court should have suppressed certain evidence; (3) the trial court erred by allowing the in-court identification of him by a prosecution witness; and (4) the evidence was insufficient to support his conviction. We affirm.
 
 I.
 
 5
 On May 12, 1994, a man attempted to rob the Mercantile Bank branch facility located in a Kansas City grocery store. At the time of the attempted robbery, Julie Glore was working as a teller at the branch. The man handed Ms. Glore an envelope containing a note, which stated, "Teller, don't try nothing stupid. Call the police or anything put me large bills in this envelope. I want $100.00, $50.00, and $20.00. I do have a gun and I will killed." Tr. at 12. Ms. Glore described him as a black man wearing a blue hooded sweatshirt pulled up around his face and sunglasses. Before Ms. Glore could completely comply with his demands, the telephone rang inside the branch facility, startling the man and causing him to leave before receiving any of the demanded money. The demand note and the envelope were left at the scene.
 
 
 6
 Mr. Cosby's fingerprints were subsequently found on the demand note and the envelope. On June 20, 1994, he was arrested for the attempted robbery of the Mercantile Bank. While Mr. Cosby was in a holding cell at the police station, a detective saw a white object drop to the ground from behind his back. Upon Mr. Cosby's removal from the cell, the detective discovered an envelope with a note that stated, "Teller, don't try any stupid I do have a gun. And will use it place large bills 100 & 50 in this envelope, don't push no alarms, give any signal or etc, I will shoot, do it fast." Tr. at 94-98.
 
 
 7
 On the day of his arrest, a search warrant was executed at Mr. Cosby's residence. Pursuant to the warrant, officers seized a blue hooded sweatshirt and a maroon briefcase containing personal papers. Based upon a comparison of the papers with the demand note used in the Mercantile Bank robbery attempt, a FBI handwriting examiner concluded that Mr. Cosby had written the demand note.
 
 
 8
 Prior to trial, Mr. Cosby filed a motion in limine to exclude all evidence pertaining to his three prior bank robbery convictions in the Western District of Missouri. He also sought to suppress the in-court identification of him by Ms. Glore and evidence relating to the blue hooded sweatshirt and the maroon briefcase. The district court denied these motions. The jury convicted Mr. Cosby of attempted bank robbery, and he timely filed this appeal.
 
 II.
 
 9
 Mr. Cosby contends that the trial court erred by admitting evidence of his three prior bank robbery convictions. We review the trial court's ruling on evidentiary matters only for abuse of discretion. United States v. Reddeck, 22 F.3d 1504 (10th Cir.1994).
 
 
 10
 The trial court held that the prior convictions were admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, which provides in pertinent part as follows:
 
 
 11
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 12
 The United States Supreme Court has established four requirements governing the admission of Rule 404(b) evidence. Huddleston v. United States, 485 U.S. 681 (1988). First, the evidence must be offered for a proper purpose. Id. at 691. Second, the evidence must be relevant. Id. Third, the probative value of the evidence must substantially outweigh its potential for unfair prejudice. Id. Finally, the trial court must, upon request, instruct the jury that the evidence is to be considered only for the purpose for which it was admitted. Id. at 691-92.[1] In addition, the government is required to "articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts" and "the trial court must specifically identify the purpose for which such evidence is offered." United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir.1985), cert. denied, 474 U.S. 1081 (1986).
 
 
 13
 In the instant case, the district court determined that evidence of Mr. Cosby's prior convictions was relevant on the issue of identity. The government asserted and the district court agreed that such evidence was not used to prove Mr. Cosby's character, but rather was utilized to demonstrate that the other offenses and the current offense shared common elements which gave them a "signature quality." See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir.1982), cert. denied, 461 U.S. 910 (1983). "[E]vidence of another crime need not be identical to the crime charged, but need only be similar and share with it 'elements that possess signature quality.' " United States v. Porter, 881 F.2d 878, 887 (10th Cir.) (quoting Gutierrez, 696 F.2d at 755), cert. denied, 110 S.Ct. 348 (1989).
 
 
 14
 We conclude that the district court did not abuse its discretion in ruling that the other bank robberies shared a signature quality with the instant offense. The record reveals that all four crimes occurred mid-day between the hours of 11:50 a.m. and 2:50 p.m. In each case, the robber wore sunglasses inside the building and handed an envelope containing a demand note to the teller. The most striking similarity, however, is in the language used in each demand note.[2] Each note was addressed to "Teller" and warned the teller not to try anything stupid because the robber had a gun. Each note demanded that the teller place large bills in the same envelope to give back to him. Based upon this evidence, we conclude that the district court properly admitted evidence of Mr. Cosby's other offenses pursuant to Rule 404(b).
 
 III.
 
 15
 Mr. Cosby also alleges that the district court erred by failing to suppress certain evidence seized during the search of his residence. In particular, he contends that the blue hooded sweatshirt and the papers contained in the maroon briefcase should not have been admitted into evidence because they were seized in violation of the Fourth Amendment. In reviewing Fourth Amendment claims, we uphold the factual findings of the district court unless they are clearly erroneous. United States v. Fernandez, 18 F.3d 874, 876 (10th Cir.1994). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. Id.
 
 
 16
 On June 20, 1994, police officers executed a search warrant at Mr. Cosby's residence. The warrant authorized the officers to search for "[a]ny typewriter, "[v]arious items of clothing depicted in bank robbery surveillance photographs" and "[p]ens or other writing instruments." Rec. at 24, ex. A. The Court notes that the blue hooded sweatshirt fit the description of the sweatshirt worn during the attempted robbery. The warrant, therefore, authorized seizure of the sweatshirt, which fell within the category of "various items of clothing depicted in bank robbery surveillance photographs."
 
 
 17
 The warrant, however, did not specifically authorize seizure of the briefcase and the papers it contained. A warrantless search is per se unreasonable under the Fourth Amendment, unless it fits within one of the recognized classes of exceptions. Minnesota v. Dickerson, 113 S.Ct. 2130 (1993). One such exception is the "plain-view" doctrine.
 
 
 18
 Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object--i.e., if "its incriminating character [is not] 'immediately apparent,' " the plain-view doctrine cannot justify its seizure.
 
 
 19
 Id. at 2136-37 (citations omitted).
 
 
 20
 In the instant case, the officers were executing a valid search when they discovered the briefcase in a closet in Mr. Cosby's bedroom. Because the warrant authorized the seizure of specified items of clothing, the officers were properly searching the inside of the closet. Further, the warrant authorized the seizure of "[p]ens or other writing instruments," thus the officers had a "lawful right of access" to the briefcase, which is a logical place to search for pens. Once they opened the briefcase, the papers inside were in "plain view" and their incriminating nature as handwriting exemplars would have been immediately apparent to officers who knew that hand-written demand notes had been used in the Kansas and Missouri crimes. We thus conclude that seizure of these papers was reasonable and that the district court properly allowed their admission at trial.
 
 IV.
 
 21
 Mr. Cosby contends that the district court should not have allowed Ms. Glore to identify him in court because she had failed to positively identify him in a video line-up. He further argues that a "substantial likelihood of misidentification" existed because she had described the suspect as wearing sunglasses and a hood. Aplt.Br. at 10. We review the district court's ruling on the admissibility of evidence only for an abuse of discretion. United States v. Poole, 929 F.2d 1476, 1479 (10th Cir.1991).
 
 
 22
 Although the authority cited by Mr. Cosby in his brief outlines the standard for admissibility of pre-trial identifications, he does not challenge the constitutionality of the pre-trial identification procedures in his case. Rather, he alleges that because Ms. Glore was not certain in her identification of him in the video line-up,[3] she should not have been able to positively identify him at trial. Mr. Cosby cites no authority for the proposition that a witness' failure to positively identify a suspect in a line-up precludes that witness from identifying the suspect during her trial testimony. We reject such a position and conclude that the district court did not abuse its discretion in allowing Ms. Glore's in-court identification of Mr. Cosby.
 
 V.
 
 23
 Finally, Mr. Cosby asserts that but for the district court's errors in admitting his prior convictions, handwriting exemplar evidence, and Ms. Glore's in-court identification, the evidence would have been insufficient to sustain his conviction. Because we have concluded above that such evidence was properly admitted by the district court, we hold that the evidence presented at Mr. Cosby's trial was sufficient to support his conviction for attempted bank robbery.
 
 
 24
 Based on the foregoing, we AFFIRM.
 
 
 
 *
 The Honorable Sven Erik Holmes, United States District Judge for the Northern District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 The record indicates that the district court gave the proper limiting instruction prior to admitting the evidence of Mr. Cosby's previous convictions
 
 
 [2]
 On May 10, 1994, Mr. Cosby robbed a Missouri bank using a demand note which stated, "Teller, Don't try nothing stupid. Just put all large bills in the envelope. If you move I will shoot I have a gun, $100.00, $50.00, $20.00." Rec. at 22, ex. 4
 On May 15, 1994, he entered another Missouri bank and handed a similar note to the teller. Mr. Cosby took the demand note used in that robbery with him, but the teller recalled that the note read, "Teller, Don't say a word, I have a gun--give me all of your large bill's--100s & 50's." Id. at ex. 5.
 On June 1, 1994, Mr. Cosby used the following note in another bank robbery: "Teller Please don't do anything stupid, I do have a gun and will use it, put large bills 100.00 & 50.00 in this envelope Don't push no alarms, don't call no police, and do it fast, or I will pull this gun out and shoot!!!!"
 
 
 [3]
 In his report, FBI Agent Robert J. Novotny stated the following results of the video line-up:
 The lineup consisted of five black males, # 3 of which was Gregory Cosby.
 Glore viewed the lineup, and afterwards stated that it was hard for her to decide, due to the fact that during the attempted robbery of her teller station, the man was wearing sunglasses and a hooded sweatshirt, however, she stated that of the five individuals, the person in # 3 position and # 5 position looked the most similar, and of those two she believed the person who robbed her would be the individual in position # 3.
 Aplt.Br. at ex. 5.