F I L E D
United States Court of Appeals
Tenth Circuit

JUL 1 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID A. DASHNEY,

Defendant - Appellant.

No. 95-1408

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 94-Z-465)

---

Richard L. Gabriel, Holme, Roberts & Owen, Denver, Colorado, appearing for
Defendant-Appellant.

John M. Hutchins, Assistant U.S. Attorney, Mountain States Drug Task Force
(Henry L. Solano, U.S. Attorney for the District of Colorado with him on the
brief), Denver, Colorado, appearing for Plaintiff-Appellee.

---

Before TACHA , BALDOCK, and EBEL, Circuit Judges.

---

TACHA, Circuit Judge.

David Dashney appeals an order of the district court denying his 28 U.S.C.

§ 2255 motion to vacate his conviction and sentence for structuring cash transactions in order to evade currency transaction reporting requirements. Dashney argues that: (1) the jury instructions inadequately apprised the jury that knowledge of illegality is an element of the offense of structuring, (2) the record contains insufficient evidence to support a finding that Dashney knew that structuring was illegal, (3) the district court improperly denied Dashney an opportunity to present a defense that he had no knowledge that structuring was illegal, and (4) the indictment was jurisdictionally defective because it did not charge Dashney with knowledge that structuring was illegal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## BACKGROUND

In 1990, a grand jury indicted Dashney on two counts of structuring cash transactions in order to evade currency reporting requirements in violation of 31 U.S.C. §§ 5324(3), 5322(a), and 18 U.S.C. § 2.[1] Dashney immediately moved to

---

[1] At all times relevant to this case, section 5324(3) stated:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Section 5322(a) stated:

A person willfully violating this subchapter or a regulation prescribed under this subchapter (except section 5315 of this title or a regulation prescribed

dismiss the indictment because it failed to charge him with knowledge that structuring was illegal. The district court denied the motion, concluding that knowledge of illegality is not an element of a structuring offense. Dashney again raised the issue during a jury instruction conference. Over Dashney's objection, the district court outlined the elements of a structuring offense in Instruction No. 12:

> In order for the defendant to be found guilty of structuring or attempting to structure a financial transaction in order to evade the filing of a currency transaction report, the government must prove all of the following four elements beyond a reasonable doubt:
> First, that the defendant had knowledge that a financial institution was required to report currency transactions in excess of $10,000;
> Second, that the defendant knowingly and willfully structured or attempted to structure a currency transaction;
> Third, that the purpose of the structured transaction or attempted structured transaction was to evade the bank's reporting requirements;
> Fourth, that the structured transaction involved one or more domestic financial institutions. . . .

(Emphasis added). The trial court then defined "willfully" in Instruction No. 15:

> An act is done "willfully" if done voluntarily and intentionally, and with specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.
> To evade or attempt to evade the reporting requirements of 31 U.S.C. 5313(a), means the defendant acted voluntarily and intentionally and with the specific intent to knowingly keep financial institutions from having sufficient information to prepare and file

---

under section 5315) shall be fined not more than $250,000, or imprisoned for not more than five years, or both.

- 3 -

with the United States Treasury Department the currency transaction report.

In other words, the evasion or attempted evasion must be made with the bad purpose of seeking to prevent financial institutions from making a written report of the currency transaction.

The word "knowingly" means that the act or omission was done voluntarily and intentionally, and not because of mistake or accident.

(Emphasis added). Similarly, Instruction No. 16 stated:

The crime charged in this case . . . requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the Government must prove that the defendant knowingly did an act which the law forbids, as knowingly is defined earlier, purposely intending to violate the law.

(Emphasis added). The jury convicted Dashney on both counts.

On direct appeal, we affirmed the conviction on Count 1 but reversed and vacated the conviction on Count 2, holding that the structuring charged constituted one violation. United States v. Dashney, 937 F.2d 532, 541-42 (10th Cir.), cert. denied, 502 U.S. 951 (1991). We also held that to establish that a defendant "willfully violated" the antistructuring law, the government need not prove that the defendant acted with knowledge that his conduct was unlawful. Id. at 540.

Three years later, in Ratzlaf v. United States, 510 U.S. 135, 136-37 (1994), the Supreme Court held that knowledge of illegality is required to sustain a conviction for structuring. Relying on Ratzlaf, Dashney filed a motion to vacate

his conviction pursuant to 28 U.S.C. § 2255. The district court concluded that Ratzlaf should not be applied retroactively and denied the motion. We reversed and remanded for consideration on the merits. United States v. Dashney, 52 F.3d 298, 299 (10th Cir. 1995).

On September 12, 1995, the district court denied Dashney's § 2255 motion on the merits. The court determined that the jury instructions used at Dashney's trial complied with Ratzlaf because they required the jury to find that Dashney had a specific intent to act with knowledge that his conduct was unlawful. In addition, the district court determined that the evidence was sufficient to support a finding of knowledge of illegality. Dashney appeals the district court's order denying his motion to vacate his conviction.

## DISCUSSION

I. JURY INSTRUCTIONS

Dashney argues that the trial court's instructions were insufficient because they failed to instruct the jury that knowledge of illegality is an element of a structuring offense. When reviewing a challenge to jury instructions, we consider the instructions as a whole to determine whether the instructions adequately state the law and provide the jury with an ample understanding of the issues and controlling principles of law. United States v. Edwards, 69 F.3d 419, 433 (10th Cir. 1995), cert. denied, 116 S. Ct. 2497 (1996).

In Ratzlaf, the Supreme Court held that structuring is not committed "willfully" within the meaning of 31 U.S.C. § 5322(a) unless the defendant knows that his conduct is unlawful. Ratzlaf, 510 U.S. at 136-37. The Court thus concluded that the trial court erred by expressly instructing the jury that the government does not need to prove that a defendant knew that his structuring was unlawful. Id. at 137-38.

In holding that a structuring offense requires knowledge of illegality, the Court reasoned that § 5322(a)'s omnibus "willfulness" requirement should be construed the same way each time it is called into play by provisions in the same subchapter. Id. at 141. The Court noted that the courts of appeals, in construing § 5322(a)'s "willfulness" requirement, have consistently instructed juries to find "willfulness" when the defendant acted with "'specific intent to commit the crime,' i.e., a 'purpose to disobey the law'" or when the defendant intended to violate a "known legal duty." Id. at 659-60 (citing cases involving "willful" violations of 31 U.S.C. §§ 5313, 5314, 5316).

In this case, the jury instructions contain language similar to the language cited with approval by the Court in Ratzlaf. Instruction No. 12 informed the jury that a structuring conviction required them to find that Dashney acted "willfully" and Instruction No. 15 defined a "willful" act as one done with "specific intent to do something the law forbids; that is to say, with bad purpose to disobey or

- 6 -

disregard the law." Instruction No. 16 reiterated the requirement that the government "prove that the defendant knowingly did an act which the law forbids, as knowingly is defined earlier, purposely intending to violate the law." Viewing the instructions as a whole, we hold that the jury instructions complied with Ratzlaf.

Unlike the deficient jury instruction in Ratzlaf, the jury instructions in this case did not explicitly inform the jury that it did not need to find that the defendant knew that his conduct was unlawful. See Ratzlaf, 510 U.S. at 137-38; see also United States v. Garza, 42 F.3d 251, 253 (5th Cir. 1994), cert. denied, 115 S. Ct. 2263 (1995); United States v. Jackson, 33 F.3d 866, 869 (7th Cir. 1994), cert. denied, 115 S. Ct. 1316 (1995); United States v. Bencs, 28 F.3d 555, 564 (6th Cir. 1994), cert. denied, 513 U.S. 1117 (1995); United States v. Rogers, 18 F.3d 265, 267 (4th Cir. 1994). Nor did the instructions fail to define the willfulness element in terms of specific intent to act with the purpose to disobey or disregard the law. See United States v. Retos, 25 F.3d 1220, 1229-30 (3d Cir. 1994) (finding error where the district court instructed the jury that the defendant must act willfully but failed to define the term "willfulness"). Although Instruction No. 12 did not explicitly require the jury to find that knowledge of illegality was an essential element of a structuring offense, the jury instructions as a whole required the jury to make such a finding. The majority of the courts of

appeals that have addressed similar jury instructions have reached the same

conclusion.[2]  We therefore hold that the instructions as a whole complied with

---

[2] Since Ratzlaf, the courts of appeals have struggled to determine the adequacy of jury instructions in trials conducted prior to Ratzlaf.  Compare United States v. Marder, 48 F.3d 564, 574 (1st Cir.) (finding error where the district court instructed the jury that "the Government has to prove . . . [the structuring] was done willfully, that is, that the defendant knew of the reporting requirement and that the structuring had the purpose of evading the requirement"), cert. denied, 115 S. Ct. 1441 (1995) with United States v. Goulding, 26 F.3d 656, 668-69 (7th Cir.) (finding compliance with Ratzlaf where the district court instructed the jury that "[a]n act is done willfully if done voluntarily and intentionally with the purpose of avoiding a known legal duty"), cert. denied, 115 S. Ct. 673 (1994) and United States v. Walker, 25 F.3d 540, 548 (7th Cir.) (finding compliance with Ratzlaf where the district court instructed the jury that "[a]n act is done willfully if done voluntarily and with intention to do something the law forbids"), cert. denied, 115 S. Ct. 371, and cert. denied, 115 S. Ct. 531 (1994).

At least three circuit courts have addressed instructions that were substantially similar to the instructions in this case.  In United States v. Hurley, 63 F.3d 1, 14 (1st Cir. 1995), cert. denied, 116 S. Ct. 1322 (1996), the district court instructed the jury that "[a]n act is done willfully if its [sic] done knowingly and with an intent to do something the law forbids . . . [and] with the purpose of either disobeying or disregarding the law."  On direct review, the First Circuit upheld the defendant's conviction, concluding that the instruction did not constitute plain error, if error at all.  Id.  Similarly, in United States v. Vazquez, 53 F.3d 1216, 1221 (11th Cir. 1995), the district court instructed the jury that "[t]he word 'willfully' as that term has been used from time to time in these instructions means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids, that is, with bad purpose either to disobey or disregard the law."  On direct review, the Eleventh Circuit concluded that the jury charge did not constitute plain error under Ratzlaf.  Id. at 1222.

Only the Second Circuit in Peck v. United States, 73 F.3d 1220, 1226-27 (2d Cir. 1995), vacated on other grounds, 106 F.3d 450, 451 (2d Cir. 1997), found error where an instruction expressly defined willfulness as an act done "with the specific intent to do something the law forbids or . . . with bad purpose either to disobey or disregard the law."  The court based its conclusion solely on the district court's rejection of an instruction requested by the defendant that would have explicitly required the prosecution to prove knowledge of illegality.  Id. at 1227 n.7.  The court stated that because the defendant "expressly sought, and the district court rejected, an instruction that complied with Ratzlaf . . . there is no basis to regard the instruction that was given, even if arguably

<u>Ratzlaf</u>'s requirement that the jury be instructed that knowledge of illegality is an element of a structuring offense.

## II.   SUFFICIENCY OF THE EVIDENCE

Dashney next argues that the record contains insufficient evidence to support a finding that he knew that structuring was illegal.  In addressing Dashney's claim, we review the record de novo,  <u>United States v. Grimes</u>, 967 F.2d 1468, 1472 (10th Cir.), <u>cert. denied</u>, 506 U.S. 927 (1992), and ask whether "taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." <u>United States v. Urena</u>, 27 F.3d 1487, 1489 (10th Cir.) (quotation omitted), <u>cert. denied</u>, 513 U.S. 977 (1994).  "We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States  v. Wacker</u>, 72 F.3d 1453, 1462-63 (10th Cir. 1995), <u>cert. denied</u>, 117 S. Ct. 136 (1996).

---

ambiguous, as satisfying <u>Ratzlaf</u>."  <u>Id.</u>

We respectfully disagree with the conclusion reached by the Second Circuit in <u>Peck</u>.  In determining the sufficiency of the jury instructions, we look to the instructions <u>as given</u> and ask whether those instructions "adequately state the law and provide the jury with an ample understanding of the issues and controlling principles of law." <u>Edwards</u>, 69 F.3d at 433.  Although the district court in this case, as in <u>Peck</u>, refused to construct a particular instruction to the satisfaction of the defendant, we believe the instructions that were given complied with <u>Ratzlaf</u>.

In Ratzlaf, the Supreme Court stated that structuring is not "inevitably nefarious." Ratzlaf, 510 U.S. at 144. In other words, structuring is not so "obviously 'evil' or inherently 'bad'" that the act of structuring itself is sufficient to establish knowledge of illegality. Id. at 146. Nevertheless, the majority in Ratzlaf recognized that a jury may find that the defendant knew that structuring was illegal "by drawing reasonable inferences from the evidence of defendant's conduct." Id. at 149 n.19.

Today we must determine what type and quantum of proof is sufficient to support a reasonable inference of knowledge of illegality. We begin with the proposition that evidence that a defendant structured currency transactions, without more, is insufficient to prove that the defendant knew that his conduct was illegal. See Vazquez, 53 F.3d at 1225. Instead, the evidence must suggest knowledge that structuring is illegal as distinct from knowledge of the reporting requirements. See United States v. Wynn, 61 F.3d 921, 928 (D.C. Cir.), cert. denied, 116 S. Ct. 578 (1995).

The majority of the circuit courts have agreed that "when the method of structuring suggests a significant effort not only to avoid the bank reporting requirements but to conceal the currency structuring itself from the authorities, Ratzlaf's requirement of 'something more' is satisfied." United States v. Simon, 85 F.3d 906, 910 (2d Cir.) (quoting Ratzlaf, 510 U.S. at 136-37), cert. denied, 117

- 10 -

S. Ct. 517 (1996).[3] Today we adopt the majority rule and conclude that in the

structuring context, "proof of concealment tends to prove knowledge of

illegality." Marder, 48 F.3d at 574.

---

[3] In reviewing for sufficiency of the evidence, three circuits have held that a jury may infer willfulness from the defendant's concealment of the structuring activity. In United States v. Beidler, 110 F.3d 1064, 1070 (4th Cir. 1997), the court held that when a defendant made 34 cash deposits totaling $116,500 at ten different branches of three different banks, a jury could reasonably infer that the defendant intended to conceal his structuring because he knew that structuring was illegal. Similarly, in Simon, 85 F.2d at 910, the Second Circuit held that when a defendant traveled to eight different branches of a bank on fourteen different occasions over a seven-day period, the defendant's "extensive effort" to conceal his structuring supported an inference that the defendant knew his conduct was illegal. Likewise, in Walker, 25 F.3d at 548 n.8, the Seventh Circuit held that a defendant's complex scheme to enlist family members to purchase money orders and cashier's checks in small denominations provided sufficient evidence of knowledge of illegality.

Two circuits have come to a similar conclusion when reviewing erroneous jury instructions for plain error on direct appeal. In Marder, 48 F.3d at 574, the defendant instructed his wife to purchase three cashier's checks from three different banks in amounts less than $10,000. The First Circuit held that the defendant's extensive efforts to conceal his structuring went beyond mere avoidance of the reporting requirement and tended to prove knowledge of illegality. Id. at 574. In Peck v. United States, 106 F.3d 450, 452 (2d Cir. 1997), the defendant made twelve cash deposits of $7,500 and two cash deposits of $5,000 during a twenty-day period at various branches of a bank into an account maintained by his father. On one day, the defendant made three deposits at three separate branches and attempted to make a fourth deposit at yet another branch. Id. When the bank officer told him that a currency transaction report would have to be filed, he declined to make the deposit. Id. The Second Circuit held that a rational jury, if properly instructed, would have found Ratzlaf's heightened scienter element satisfied beyond a reasonable doubt. Id. at 457.

In Wynn, 61 F.3d at 928, the District of Columbia Circuit expressly rejected the rule set forth in Marder and Walker. The court held that the defendant's purchase of four separate cashier's checks in 1987 to purchase an automobile and the purchase of three checks in 1988 to pay off a bank loan, each for less than $10,000, was insufficient to prove knowledge of illegality. Id.

In this case, Dashney won approximately $92,400 playing blackjack in Las Vegas under the name of David Allen. He went to Florida to talk to his broker about the possibility of depositing the cash without filing a currency transaction report. His broker informed him that the brokerage firm would not accept cash deposits in any amount. Dashney then traveled to Colorado where he met his girlfriend, Sandra Jarrett. He obtained a Colorado driver's license, using Jarrett's address. On that same day, Dashney and Jarrett purchased eleven cashier's checks—none of which exceeded $10,000—from ten different banks in the Denver area. He told one teller that he had earned the money selling sunglasses. During most of the transactions, he instructed the bank tellers not to fill out a CTR because his cashier's checks were under $10,000. When a vice president of one bank informed him that a CTR must be filled out if there was a suspicion that his multiple transactions might exceed $10,000, Dashney became extremely irritated and left the bank without conducting a transaction.

Despite Dashney's "extensive efforts" to structure his transactions, Dashney asserts that this case is unlike those cases in which evidence of concealment was sufficient to support a conviction because the record contains some evidence that Dashney did not try to conceal his structuring. For example, Dashney points to evidence in the record that after receiving a cashier's check at one bank, he asked the teller if there were more banks up the street. At another

bank, he showed the teller a stack of cashier's checks and told the teller that he had started off that morning with $100,000 in cash and was going from bank to bank purchasing cashier's checks. At another bank, Dashney told the teller that he had already purchased ten cashier's checks that day and held the checks up in a fan motion for the teller to see.

We do not agree that this evidence precludes a jury from reasonably inferring that Dashney knew that structuring was illegal. As the district court stated:

> Mr. Dashney was not going around telling the tellers and the bank employees that this was okay and legal because he believed it was okay and legal. It was because he was trying to convince them to go ahead and allow him to make the various transactions without filling out the CTRs, the currency transaction reports; and he was trying to persuade them to do it to avoid the CTRs, even though my memory reminds me that several of the banks went ahead and filled them out after he left.
>
> But probably the jury could as easily or more easily find that the reason he was trying to convince them that it was legal was because he thought it was illegal.

We agree with the district court that a jury could reasonably conclude that Dashney's actions were part of a bold, yet contrived smokescreen to hide his actual knowledge that his attempt to purchase cashier's checks for less than $10,000 was illegal. Further, "when a defendant elects to testify, he subjects himself to an evaluation of his credibility by the trier of fact and runs the risk that

- 13 -

he might bolster the government's case rather than help his own cause." Vazquez, 53 F.3d at 1226.

In sum, after reviewing the record, we hold that the method of Dashney's structuring supports a reasonable inference that he knew his conduct was unlawful. The record indicates that Dashney's structuring was not "genuinely innocent of criminal intent." Hurley, 63 F.3d at 16. Thus, we hold that there was sufficient evidence to support a finding that Dashney knew that his structuring was illegal.

## III. DEFENSE THEORY

Dashney next argues that the district court denied him the right to have his theory of the case submitted to the jury. In particular, Dashney contends that because the district court refused to instruct the jury that knowledge of illegality is an element of a structuring defense, the court did not permit him to pursue this as his principal theory of defense.

We have reviewed the record and conclude that Dashney had ample opportunity to pursue the defense that he had no knowledge of the illegality of structuring. During a pre-trial hearing, the district court explicitly informed Dashney's attorney that "[t]he defendant will get [a] full opportunity to argue that—either that he had no knowledge, or that it wasn't for the purpose of

- 14 -

evading, or that it wasn't willful, or whatever other defenses he wishes to assert." R. Vol. II at 29.

At trial, Dashney defended in part by claiming he did not know his structuring was illegal. He testified that he thought his earnings were reported to the government by the casino. He testified that he was concerned about the "bureaucratic problems" which might arise from having the same money reported to the government again when he bought cashier's checks. During cross-examination of Dashney's broker, the defense asked whether he had the impression that Dashney thought he could legally do what he wanted with the cash. The broker responded affirmatively, supporting Dashney's theory that he acted without knowledge that structuring was illegal.

Finally, as discussed above, the district court instructed the jury that it must find that Dashney acted with the bad purpose to disobey the law. In fact, Instruction No. 20 stated:

> It is the defendant's theory of the case that the defendant believed that Mirage Casino filed with the Federal Government the financial records of his gaming activities. Therefore, it was the defendant's belief that the Federal Government would have sufficient records of his financial information regarding his profits from gaming activity at the Mirage and that no further reports needed to be filled out at the financial institutions with regard to the money he had won.

> Because the defendant asserts he believed he need not fill out further reports regarding the money he had won, <u>he asserts he did not have the necessary specific intent to do something the law forbids; that is to say, with bad purpose to either disobey or disregard the law</u>.

(Emphasis added). Dashney's defense counsel in his closing then told the jury

what the government had to prove in order to convict Dashney of structuring:

> The judge is going to instruct you as to what specific intent is. As such, the Government is going to have to prove that Mr. Dashney did this for a bad purpose, to disobey the law or disregard it. That's the specific intent they have to prove.

R. Vol. IX at 450.

We have reviewed the record and conclude that Dashney had ample

opportunity to present his theory of defense to the jury. Not only did he have the

opportunity, Dashney actually relied at trial on the theory that he lacked

knowledge that structuring was illegal. The jury simply rejected that argument.

## IV. SUFFICIENCY OF THE INDICTMENT

"The sufficiency of an indictment is a question of law which we review de

novo." United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995).

An indictment need only meet minimal constitutional standards, and we determine

the sufficiency of an indictment by practical rather than technical considerations.

United States v. Dahlman, 13 F.3d 1391, 1400 (10th Cir. 1993), cert. denied, 511

U.S. 1045 (1994). An indictment is sufficient if it sets forth the elements of the

offense charged, puts the defendant on fair notice of the charges against which he

must defend, and enables the defendant to assert a double jeopardy defense.

United States v. Poole, 929 F.2d 1476, 1478 (10th Cir. 1991).

In this case, Dashney appeals his conviction on the ground that the indictment did not charge him with knowledge of illegality or mention "willfulness." Count 1 of his indictment states:

> On or about December 14, 1989, in the State and District of Colorado, DAVID A. DASHNEY, for the purpose of evading the reporting requirements of 31 U.S.C. 5313(a) and Title 31, Code of Federal Regulations, Section 103.22(a)(1), <u>knowingly, intentionally, and unlawfully</u> structured or attempted to structure a transaction or transactions or <u>knowingly, intentionally, and unlawfully</u> induced, counseled, or commanded Sandra Jarrett to structure or attempt to structure a transaction or transactions, to wit: the purchase with cash on the same business day of $99,999.93 of cashiers checks payable to the order of DAVID A. DASHNEY, with one or more domestic financial institutions in metropolitan Denver, to wit: [alleging transactions with eleven financial institutions] . . . or <u>knowingly, intentionally, and unlawfully</u> procured or caused the structuring or attempted structuring of a transaction or transaction, to wit: the purchase of cash on the same business day of $99,999.93 of cashier's checks payable to the order of DAVID A. DASHNEY, with one or more domestic financial institutions, to wit: those transactions described above in violation of 31 U.S.C. §§ 5324(3), <u>5322(a)</u>, all in violation of 18 U.S.C. § 2.

(Emphasis added).

We hold that the indictment adequately informed Dashney of the charge against him. When reviewing a post-verdict challenge to an indictment asserting the absence of an element of the offense, the indictment is sufficient if it contains "words of similar import" to the element in question. <u>United States v. Brown</u>, 995 F.2d 1493, 1505 (10th Cir. 1991). "The indictment is not insufficient merely because it fails to recite the precise language of the statute." <u>Poole</u>, 929 F.2d at

- 17 -

1479. Instead, "[a]n indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." United States v. Darrell, 828 F.2d 644, 647 (10th Cir. 1987). Moreover, a verdict against the defendant will generally cure mere technical defects unless it is apparent that they have resulted in prejudice to the defendant. Clay v. United States, 326 F.2d 196, 198 (10th Cir. 1963).

Although the indictment did not contain the word "willful," the indictment did charge the defendant with knowingly, intentionally, and unlawfully structuring. These are words of similar import sufficient to adequately inform Dashney of the charge against him. Moreover, the indictment specifically cited 31 U.S.C. § 5322(a), which requires the "willful" structuring of a currency transaction. See United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995) (upholding an indictment in part because it specifically cited the statute at issue), cert. denied, 116 S. Ct. 966 (1996).

Although Dashney argues that he was prejudiced by the wording of the indictment because he was not allowed to present his theory of defense, this argument is without merit as we discussed above. Dashney was permitted to pursue a defense that he did not know that his structuring was illegal. The jury simply did not believe his story. Under these circumstances, we hold that the

indictment is not jurisdictionally defective such that Dashney did not have fair notice of the charges against him.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court denying Dashney's § 2255 motion. We hold that: (1) the jury instructions adequately apprised the jury that knowledge of illegality is an element of structuring, (2) the record contains sufficient evidence to support a finding that Dashney knew that structuring was illegal, (3) Dashney was not denied an opportunity to present the defense that he had no knowledge of the illegality of structuring, and (4) the indictment was jurisdictionally sufficient.