FILED
United States Court of Appeals
Tenth Circuit

October 30, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIE EARL ELDRIDGE,

     Petitioner - Appellant,

v.

CARL BEAR,

     Respondent - Appellee.

No. 19-7047
(D.C. No. 6:16-CV-00240-RAW-KEW)
(E.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY***

Before **HOLMES**, **MATHESON**, and **EID**, Circuit Judges.

Petitioner-Appellant Willie Earl Eldridge, a prisoner in the custody of the

State of Oklahoma, seeks a certificate of appealability ("COA") in order to

challenge the district court's denial of his habeas petition under 28 U.S.C. § 2254.

Mr. Eldridge's § 2254 petition raises five claims. First, he argues that he was not

competent to stand trial. Second, he claims that his trial counsel was ineffective

for allowing him to stand trial. Third, he alleges that his trial counsel had an

impermissible conflict because he also represented his brother. Fourth, he claims

---

\* This Order is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1
and Tenth Circuit Rule 32.1.

that the charging information in one of his cases was vague and indefinite. And, fifth, he asserts cumulative error. The district court denied relief on all five claims.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **deny** Mr. Eldridge's request for a COA and **dismiss** this matter.

**I**

**A**

Mr. Eldridge filed a § 2254 petition to attack his conviction and sentence in two state cases. In the first case, in Atoka County District Court, he was charged with a series of sexual offenses—Case No. CF-2013-16. These included one count of first degree rape of a child under fourteen, twenty-two counts of forcible sodomy, and eight counts of lewd molestation of a child under twelve. On February 19, 2014, he was sentenced to forty years of imprisonment for the first degree rape, twenty-five years of imprisonment on each count of lewd molestation, and twenty years of imprisonment on each count of forcible sodomy. In the second state case, also before the Atoka County District Court, Mr. Eldridge was convicted of one count of first degree rape and sentenced to forty years—Case No. CF-2013-78. The state court ordered the sentences in both cases to be served concurrently, resulting in a total term of imprisonment of forty years.

Mr. Eldridge subsequently filed a § 2254 petition in federal district court, stating six grounds for relief:

> 1. The record establishes that Mr. Eldridge was not competent when the criminal proceedings were resumed.
>
> 2. Mr. Eldridge was denied effective assistance of counsel in the post-competency-examination hearing, resulting in his being forced to stand trial while incompetent.
>
> 3. Mr. Eldridge's trial counsel was laboring under a conflict of interest in representing both him and his older brother.
>
> 4. The Information was vague in case CF-2013-16.
>
> 5. The sentence was excessive.
>
> 6. Cumulative error.

The State timely filed a response and conceded that Mr. Eldridge had exhausted his state-court remedies. In his COA brief before us, Mr. Eldridge only challenges the district court's decision on five of the six issues—omitting any discussion of an excessive-sentence claim; therefore, we have no need to consider that excessive-sentence claim.

**B**

A COA is a jurisdictional prerequisite to our adjudication of the merits of a § 2254 appeal. *See* 28 U.S.C. § 2253(c)(1)(A); *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005). And we may issue a COA "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

3

§ 2253(c)(2); *accord Okyere v. Rudek*, 732 F.3d 1148, 1149 (10th Cir. 2013). "To make this showing, an applicant must demonstrate 'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *United States v. Lewis*, 904 F.3d 867, 870 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"Where, as here, the Petitioner's federal habeas claims were adjudicated on the merits in state court proceedings, Congress has instructed [in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')] that we may grant habeas relief only where the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . .' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Dockins v. Hines*, 374 F.3d 935, 936–37 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(d)).

This standard is "highly deferential [to] state-court rulings [and] demands that state-court decisions be given the benefit of the doubt." *Grant v. Royal*, 886 F.3d 874, 888 (2018) (alterations in original) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). And AEDPA specifies that "[f]actual findings of the state court are presumed correct unless the [habeas] applicant rebuts that

presumption by 'clear and convincing evidence.'" *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) (quoting 28 U.S.C. § 2254(e)(1)). "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas petitioner's request for COA." *Dockins*, 374 F.3d at 938.

## II

Mr. Eldridge seeks a COA on five issues. Before we consider them, we note that certain underlying state-court records that are material to our resolution of Mr. Eldridge's requests for a COA are not in Mr. Eldridge's appendix and are not readily accessible electronically through the district court's docket sheet—including the transcript of the state-court bench trial, the report of the forensic psychologist, and the Amended Information in CF-2013-16. In a counseled appeal such as this, it is the petitioner's burden to provide us with an adequate appendix to determine the COA issues before us. *See, e.g.*, 10TH CIR. R.10.3(B) ("In appeals in which all appellants are represented by retained counsel . . . the record will be presented in an appendix prepared by the appellant."). And Mr. Eldridge's failure to provide an adequate appendix, standing alone, could conceivably sound the death knell for his requests for a COA.[2] However, as best

---

[2] When the appellant presents a ground for appeal but fails to provide an adequate appendix to properly resolve it, we may decline to consider the issue. *See, e.g.*, *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997)

(continued...)

5

we can, based on the record materials that Mr. Eldridge has put before us, we proceed to consider each of the five claims below. We conclude that no reasonable jurist could debate the district court's resolution of any of them.

**A**

In seeking a COA, Mr. Eldridge's "principal" claim is that he was not competent to stand trial, and, by allowing the trial to proceed, the Oklahoma trial court violated his Fourteenth Amendment due-process rights. Aplt.'s Br. at 6. More specifically, Mr. Eldridge contends that "the report of Dr. Roberson [a forensic psychologist] found [Mr.] Eldridge competent, but with *qualifications*; and the State has not shown compliance with the qualifications—[that is,] substantial interaction with [Mr.] Eldridge by counsel above and beyond that required with a typical client." *Id.* at 18. Accordingly, Mr. Eldridge contends

---

[2](...continued) ("In this circuit and under the Federal Rules, the appellant bears the responsibility of providing this court with 'an appendix sufficient for consideration and determination of the issues on appeal.' . . . Because the appellant's appendix is insufficient to permit assessment of th[e] claim of error, we must affirm." (citations omitted) (quoting 10TH CIR. R. 30.1.1)). And we are "not obligated to remedy these failures by counsel to designate an adequate record." *Burnett v. Southwestern Bell Tel.*, 555 F.3d 906, 915 (10th Cir. 2009); *see id.* ("Our procedural rules should not be considered 'empty gestures,' as '[w]e have repeatedly enforced them.'" (quoting *Travelers Indem. Co. v.. Accurate Autobody, Inc.*, 340 F. 3d 1118, 1121 (10th Cir. 2003)). We nevertheless will proceed, as best we can, to consider whether to issue a COA with regard to Mr. Eldrige's five claims. But insofar as our review is "hobbled" because of an inadequate appendix, Mr. Eldridge is not in any position to protest. *Burnett*, 555 F.3d at 908.

6

that the Oklahoma Court of Criminal Appeals ("OCCA") unconstitutionally sustained his conviction, although he was incompetent to stand trial. We conclude, however, that no reasonable jurist could debate the district court's resolution of this claim.

## 1

The issue of mental competency arose prior to trial. Judge Preston Harbuck of the District Court for Atoka County ordered a competency evaluation at the preliminary-hearing conference. Subsequently, Dr. Shawn Roberson (a forensic psychologist) prepared and filed a report with the court. The evaluation addressed several questions, including: (1) whether Mr. Eldridge could appreciate the nature of the charges made against him; (2) whether he could consult with his lawyer and rationally assist in the preparation of his defense; and (3) if not, whether Mr. Eldridge could attain competency within the statutory period defined by OKLA. STAT. TIT. 22, § 1175.3. *See* Aplt.'s App. at 8–9 (Dist. Ct. Op. & Order, filed Sept. 3, 2019) (listing seven questions for Dr. Roberson to answer in his report). In relevant part, the report concluded that Mr. Eldridge was competent to stand trial but that he did not exhibit a good understanding of legal matters and, in particular, matters related to his case. In this regard, Dr. Roberson opined that Mr. Eldridge had lower-than-average intelligence and lack of familiarity with the criminal-justice process. Dr. Roberson averred that, in addressing his knowledge

7

deficits, Mr. Eldridge would benefit from additional time for explanations and discussions with his counsel to ensure that he was aware of the nature of the legal proceedings.

After the trial resulted in his conviction, Mr. Eldridge appealed and raised a claim related to his competency.  Mr. Eldridge argued that the conclusions of Dr. Roberson's competency report were not followed, and, more specifically, that the State had not shown that Mr. Eldridge was given additional time and explanations by his trial counsel so that he could adequately understand the trial proceedings. Mr. Eldridge therefore contended that he was incompetent to stand trial and, in particular, that the competency standards that the U.S. Supreme Court articulated were not satisfied.

The OCCA denied relief.  In rejecting Mr. Eldridge's claim, the OCCA explained its findings as follows:

> Appellant's request for a competency evaluation was granted without objection by the State. The forensic psychologist concluded that Appellant, while suffering from intellectual deficits, was nevertheless competent to proceed. Appellant then waived his right to a trial on the issue. He offers no convincing reason for this Court to question either the examiner's findings, or his own ability to waive further challenge to same.

Aplt.'s App. at 33 (*Eldridge v. State*,  No. F-2014-172, at 2 (Okla. Crim. App., Mar. 10, 2015)).  On habeas review, the federal district court rejected Mr. Eldridge's competency claim.  The court concluded that the OCCA did not act

8

contrary to Supreme Court law and was not unreasonable in rejecting Mr. Eldridge's competency claim. We conclude that reasonable jurists could not debate the correctness of the district court's conclusion.

**2**

According to the Supreme Court, "[i]t is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1975), and *Pate v. Robinson*, 383 U.S. 375 (1966)). In fact, "the right *not* to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination." *Cooper v. Oklahoma*, 517 U.S. 348, 354 n.4 (1996) (emphasis added). "The test for competence to stand trial . . . is whether the defendant has the present ability to understand the charges against him and communicate effectively with defense counsel." *Id.* at 368; *accord Allen v. Mullin*, 368 F.3d 1220, 1238–39 (10th Cir. 2004).

Here, Mr. Eldridge has not shown that a reasonable jurist would debate the district court's resolution of this claim. The OCCA upheld the trial court's determination that Mr. Eldridge was competent to stand trial. And, even if this was not a factual determination entitled to a presumption of correctness under

9

28 U.S.C. § 2254(e)(1), Mr. Eldridge would still be obliged to demonstrate it was unreasonable. *See Grant*, 886 F.3d at 914. And he cannot do so. Contrary to Mr. Eldridge's suggestion, the OCCA reasonably interpreted Dr. Roberson's report (as excerpted in the district court's opinion) as making an *unqualified* determination that Mr. Eldridge was competent to stand trial.[3] That the report went on to recommend that Mr. Eldridge be given additional consultation time with his counsel in light of his undisputed intellectual deficits and unfamiliarity with the criminal-justice system did nothing to undercut the unqualified nature of Dr. Roberson's determination that Mr. Eldridge was competent to stand trial, the

---

[3]     As reproduced in the district court's opinion, the report states in part:

> Mr. Eldridge's intelligence was consistently tested to be in the high Borderline (between Mental Retardation and Low Average) to low Average ranges while in school; though currently it tested in the range of Mild Mental Retardation. Mental Retardation must have an onset prior to age 18 and the available data does not support that Mr. Eldridge meets diagnostic criteria. I suspect that his current score was depressed due to his current situation. During the current evaluation Mr. Eldridge's responses supported that he *appreciated the nature of the charges against him*. He demonstrated a poor understanding of basic legal and case information. However, given his lower than average intelligence and lack of experience with the criminal justice system, this may be remediated through a meeting with his attorney. In addition, a Borderline to Low Average range of intelligence is *not* associated with incompetence. Therefore, it is the opinion of this examiner that *he can consult with his attorney and rationally assist in his defense*.

Aplt.'s App. at 9 (emphases added).

10

OCCA could reasonably conclude. And the OCCA reasonably determined that Mr. Eldridge offered no convincing reason to question Dr. Roberson's determination.

In sum, reasonable jurists could not debate the district court's determination that the OCCA's rejection of Mr. Eldridge's competency claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court law. We therefore conclude that Mr. Eldridge has not met his burden to justify issuance of a COA on this issue.

**B**

Mr. Eldridge next brings a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, he alleges that his trial counsel was constitutionally ineffective for stipulating to the findings of Dr. Roberson's report, without any argument or analysis of Mr. Eldridge's underlying mental deficits and without representing to the court that he had taken "extra care with [Mr.] Eldridge, which was the big qualification given by Dr. Roberson." Aplt.'s Br. at 27. According to Mr. Eldridge, there is "a reasonable likelihood that, had counsel advocated zealously his client's position, the result would have been different." *Id*. We conclude that no reasonable jurist could debate the district court's rejection of this claim.

**1**

It is well settled that a *Strickland* claim will be sustained "only when (1) 'counsel made errors so serious that counsel was not functioning as "counsel"' and (2) 'the deficient performance prejudiced the defense.'" *Johnson v. Carpenter*, 918 F.3d 895, 900 (10th Cir. 2019) (quoting *Strickland*, 466 U.S. at 687). Notably, under *Strickland*, "the appropriate test for prejudice" provides that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

This *Strickland* standard is "highly deferential." *Id.* at 689. Moreover, on top of that, AEDPA—in particular, 28 U.S.C. § 2254(d)(1)—requires us to ask whether the state court's application of *Strickland* was contrary to or an unreasonable application of that clearly established Supreme Court law. "Thus, '[t]he standards created by *Strickland* and § 2254(d) are *both* highly deferential, and when the two apply in tandem, review is doubly so.'" *Johnson*, 918 F.3d at 900 (alteration in original) (emphasis added) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *accord Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017). In particular, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is *any*

12

*reasonable argument* that counsel satisfied *Strickland*'s deferential standard."

*Ellis*, 872 F.3d at 1084 (quoting *Richter*, 562 U.S. at 104). Moreover, "[w]e need not analyze both the performance and prejudice prongs of the *Strickland* test if defendant 'fails to make a sufficient showing of one.'" *United States v. Hollis*, 552 F.3d 1191, 1194 (10th Cir. 2009) (quoting *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005)); *see Strickland*, 466 U.S. at 697 (noting that there is no need for a court to "address both components of the [ineffective-assistance] inquiry if the defendant makes an insufficient showing on one").

## 2

No reasonable jurist could debate the district court's determination that the OCCA reasonably rejected Mr. Eldrige's ineffective-assistance claim. Without more, we could rest this determination on the second, prejudice prong of *Strickland*. That is because our conclusion that the district court's competency assessment is not reasonably debatable—that is, its determination that the OCCA reasonably rejected Mr. Eldrige's claim that he was incompetent to stand trial—"sounds the death knell for Mr. [Eldridge's] ineffective-assistance claim because it undercuts his ability to satisfy this [second, prejudice] prong." *Grant*, 886 F.3d at 917. "In other words, given Mr. [Eldrige's] competency, there is no reasonable probability that the court would have ruled favorably," *id.*, on any efforts by Mr. Eldridge's counsel to challenge his competency in a post-

13

examination hearing. Therefore, based on the second prong of *Strickland* alone, Mr. Eldridge's COA showing comes up short.

In any event, under AEDPA's doubly deferential standards, Mr. Eldridge also cannot establish a basis for relief with respect to *Strickland*'s first prong. At best, Mr. Eldridge's arguments are non-specific and conclusory. For example, Mr. Eldridge offers nothing specific to cast doubt on the OCCA's determination that he failed to meaningfully draw into question on appeal "his own ability to waive" a post-examination hearing. Aplt.'s App. at 33 (*Eldridge v. State*, No. F-2014-172, at 2 (Okla. Crim. App., Mar. 10, 2015). Indeed, Mr. Eldridge largely repackages the arguments that he made in addressing the competency issue *supra*, emphasizing his "history and background" and Dr. Roberson's determination that he possessed lower-than-normal intelligence. Aplt.'s Br. at 27. However, the OCCA was not unreasonable in concluding that Mr. Eldridge's counsel could have reasonably decided that such low-intelligence findings provided no basis to challenge Dr. Roberson's overall, unequivocal determination that Mr. Eldridge was competent. Accordingly, under *Strickland*'s first prong as well, Mr. Eldridge's COA showing fails.

In sum, reasonable jurists could not debate the district court's rejection of Mr. Eldridge's ineffective-assistance claim.

14

## C

Mr. Eldridge next claims that his counsel had an impermissible conflict of interest that violated his Sixth Amendment rights (as incorporated by the Fourteenth Amendment).

Mr. Eldridge's argument focuses on his trial counsel's representation of Loyd Eldridge, Sr.,[5] his elder brother, whom the State prosecuted and convicted in a separate proceeding of multiple counts of forcible sodomy and lewd acts with his step-daughter—and one of Mr. Eldridge's own victims—A.J.[6] Mr. Eldridge contends that "the fact that the brothers [Eldridge] faced nearly identical allegations of sexual assault, by the same complaining witness, during the same time frame, would at a minimum require independent counsel to investigate and advocate on their respective behalf[s]." Aplt.'s Br. at 31. Mr. Eldridge further notes that—under pressure from her mother to recant her allegations against Loyd—A.J. instead "accused [Mr. Eldridge] of committing the sexual assaults." Id. at 30. He reasons that "[i]t is obvious that trial counsel, if tasked with representing the interests of one brother, would necessarily have been obligated to cast blame on the other . . . where the complaining witness accused both of the

---

[5]    For clarity's sake, because they share the same last name, we refer to Loyd Eldrige, Sr., hereafter as simply "Loyd."

[6]    Recall that Mr. Eldridge also was criminally charged for sexual acts against A.J. Those acts occurred during substantially the same period of time as Loyd's sexual abuse of A.J.

15

same acts occurring over the same time period," but because counsel "was representing both brothers at the same time against the identical allegations, defense counsel could not ethically pursue a defense that sought to exonerate [Mr. Eldridge] by casting blame on Loyd." *Id.* at 31–32.

Notably, Mr. Eldridge does not contend that he objected before the trial court to this purported conflict of interest. And, when he presented his conflict-of-interest claim to the OCCA, that court rejected it under the following rationale:

> While both men were represented by the same appointed counsel, that fact alone does not create a conflict of interest. According to this victim's testimony, each defendant acted independently. The Sixth Amendment right to conflict-free counsel is not violated by the mere *theoretical* possibility of divided loyalties.

Aplt.'s App. at 34. And, upon habeas review, the district court ruled likewise, determining that the OCCA's rejection of the claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court law. We hold that reasonable jurists could not debate the district court's conclusion.

**1**

The Sixth Amendment provides that a criminal defendant shall have the right to "the Assistance of Counsel for his defense." U.S. Const. amend. VI. In particular, "[t]he Sixth Amendment guarantees the 'right to representation that is free from conflicts of interest.'" *United States v. Flood*, 713 F.3d 1281, 1286 (10th Cir. 2013) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

16

As relevant here, "[a] conflict of interest may be present even when an attorney's clients are not co-defendants if a petitioner can prove that the common representation adversely affected his attorney's performance." *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003). More specifically, in a case involving multiple representation,[7] like this one, the Supreme Court has ruled that "*the possibility* of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (emphasis added).

To be clear, "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). Such an actual conflict is present "if counsel was forced to make choices advancing other interests to the detriment of his client." *United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998);

---

[7] While the terms used to describe a lawyer's representation of two or more clients under circumstances alleged to give rise to a conflict of interest are often used interchangeably by courts, the Sixth Circuit shed some light on the distinct meanings of the terms in *McFarland v. Yukins*: "joint and dual representation refer to simultaneous representation occurring in the same proceeding, while multiple representation refers to simultaneous representation in separate proceedings." 356 F.3d 688, 701 (6th Cir. 2004); *cf. Jalowiec v. Bradshaw*, 657 F.3d 293, 315 (6th Cir. 2011) (defining successive representation as a situation "where defense counsel has previously represented a co defendant or trial witness," while concurrent representation "occurs where a single attorney simultaneously represents two or more codefendants").

17

*accord Workman*, 342 F.3d at 1107. A petitioner "has the burden of showing specific instances to support his claim of actual conflict of interest." *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996); *accord Castro v. Ward*, 138 F.3d 810, 821 (10th Cir. 1998). A petitioner undisputedly will fail to make this showing if he can only demonstrate that his counsel harbored a "mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171.

The *Cuyler* standard applies when—under circumstances such as these—a petitioner "raised no objection at trial." 439 U.S. at 349; *cf. Selsor v. Kaiser*, 22 F.3d 1029, 1032 (10th Cir. 1994) ("Because in the instant case, Petitioner vigorously objected to the joint representation at trial, *Cuyler* is inapplicable."). And, under the *Cuyler* standard, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–50. "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350.

## 2

Here, Mr. Eldridge has failed to show that any reasonable jurist could debate the district court's resolution of this issue. Of importance to his contrary argument is Mr. Eldridge's assertion that the "accusations" against him were

18

"intertwined with the actions of Loyd." Aplt.'s Br. at 31. Elaborating, Mr. Eldridge states that "[i]t is obvious that trial counsel, if tasked with representing the interests of one brother, would necessarily have been obligated to cast blame on the other under the circumstances of this case where the complaining witness accused both of *the same acts* occurring over the same time period." *Id.* (emphasis added). However, based on the "victim's testimony," the OCCA expressly found that "each defendant [i.e., Mr. Eldridge and Loyd] acted independently." Aplt.'s App. at 34. This is a factual determination, which we must presume to be correct, and Mr. Eldridge bears the burden of "rebutting th[is] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Yet, Mr. Eldridge does not even attempt to do so. Therefore, the OCCA would not have been unreasonable in concluding that, because Mr. Eldridge and Loyd acted independently in sexually assaulting the victim—albeit during approximately the same time frame—the accusations against them were not intertwined and that there was no necessary conflict of interest from counsel's representation of them both.

Moreover, the OCCA acted reasonably under *Cuyler* and *Mickens* in requiring Mr. Eldridge to establish an "actual"—as opposed to a theoretical—conflict of interest, that is, a conflict that "adversely affected his lawyer's performance." *Cuyler*, 446 U.S. 350; *accord Mickens*, 535 U.S. at 172

19

n.5.  But there is no indication from the record that Mr. Eldridge did so.  Indeed, even in his COA brief, Mr. Eldridge does no more than theorize about the circumstances that allegedly could have given rise to his lawyer's conflict of interest—including the supposedly "suspicious" timing of the victim's identification of Mr. Eldridge as a perpetrator of the assaults.  Aplt.'s Br. at 32.  But *Mickens* makes clear that such a "mere theoretical division of loyalty" is not enough.  535 U.S. at 171.

In short, we conclude that no reasonable jurist could debate the district court's determination that the OCCA's resolution of Mr. Eldrige's Sixth Amendment conflict-of-interest claim was not contrary to, nor an unreasonable application of, clearly established Supreme Court law.

**D**

Mr. Eldridge next argues that the Amended Information filed in CF-2013-16 is impermissibly vague.

The Amended Information alleged one count of first degree rape, eight counts of lewd molestation, and twenty-two counts of forcible sodomy.  The Amended information was impermissibly vague, Mr. Eldridge alleges, because it "did not allege separate and distinct offenses" and instead was based on "estimates provided by [the victim] A.J."  Aplt.'s Br. at 37.  As such, he argues the Amended Information failed to meet the Supreme Court's standard established

20

in *Russell v. United States*, 369 U.S. 749, 763–64 (1962).  And, his constitutional

rights were violated because it was impossible for him to defend against the

Amended Information's multiple allegations "because there is no specific way to

differentiate between the acts alleged."  Aplt.'s Br. at 37.

**1**

In *Russell*, the Supreme Court defined the two principal criteria by which

the sufficiency of an indictment is measured:

> first, whether the indictment "contains the elements of the
> offense intended to be charged, and sufficiently apprises the
> defendant of what he must be prepared to meet," and,
> secondly, "in case any other proceedings are taken against him
> for a similar offense[,] whether the record shows with accuracy
> to what extent he may plead a former acquittal or conviction."

369 U.S. at 763–64 (quoting *Cochran & Sayre v. United States*, 157 U.S. 286, 290

(1895)); *accord United States v. Patterson*, 713 F.3d 1237, 1249 (10th Cir. 2013);

*United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011); *see also*

*Hamling v. United States*, 418 U.S. 87, 117 (1974) ("It is generally sufficient that

an indictment set forth the offense in the words of the statute itself, as long as

'those words of themselves fully, directly, and expressly, without any uncertainty

or ambiguity, set forth all the elements necessary to constitute the offence

intended to be punished.'" (quoting *United States v. Carll*, 105 U.S. 611, 612

(1882))); *United States v. Gama-Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000)

("An indictment [or Information] is sufficient if it sets forth the elements of the

21

offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997))).

**2**

In rejecting his vagueness claim, the OCCA noted that "one of the victims [i.e., A.J.] testified that [Mr. Eldridge] committed the various acts of sexual abuse against her, at times convenient for him, over a six-year period," and "[t]his victim was as specific as could be expected under the circumstances." Aplt.'s App. at 34.

The district court concluded that the OCCA's decision in this respect was not contrary to nor an unreasonable application of clearly established Supreme Court law. The court elaborated on its reasoning in the following manner:

> The undersigned has reviewed the Amended Information, which was based on A.J.'s preliminary hearing testimony. The Amended Information set out the elements of the charges and the time period of the charges. The victim, the act charged and the time window of when the crime occurred were specified within each count. Under the circumstances, the language and dates alleged therein were more than sufficient to put [Mr. Eldridge] on notice of the charges against him and to protect him from double jeopardy.

*Id.* at 22 (citation omitted). Mr. Eldridge did not include the Amended Information in the record and, therefore, we have no way of independently confirming the district court's interpretation of it. Thus, even if the district court had committed some error in its interpretation of the Amended

22

Information, we would not be situated to independently identify it. But we do know that the district court's analysis focused on the appropriate factors under *Russell* and other clearly established Supreme Court law, and we have no reason to believe that reasonable jurists would debate its conclusion. *See, e.g.*, *Burling v. Addison*, 451 F. App'x 761, 766 (10th Cir. 2011) (unpublished) (rejecting petitioner's "claims that the information charging him with sexual abuse was so vague that it violated his Sixth and Fourteenth Amendment rights," where "[t]he amended information alleged 12 counts of sexual abuse that occurred during a six-year time span," and in this regard, noting that the petitioner failed to "identify any Supreme Court opinion that would require his charging document to specify the time and location of the offense to inform him fairly of the charges filed against him").

Indeed, Mr. Eldridge offers no legal authority to support his arguments challenging the district court's conclusion. He merely points to the Supreme Court's *Russell* decision. But, aside from making conclusory statements about the charging instrument failing to fully satisfy the "mandates of *Russell*," Aplt. Br. at 37, Mr. Eldridge does nothing meaningful to demonstrate that the OCCA's rejection of his vagueness challenge was incorrect, much less contrary to or an unreasonable application of clearly established Supreme Court law. Accordingly, we conclude that reasonable jurists could not debate the district

23

court's determination that upheld the OCCA's rejection of Mr. Eldridge's vagueness challenge.

## E

Finally, Mr. Eldridge raises a claim of cumulative error. That is, even if we were to decline to grant a COA on any one of his individual claims, we should nonetheless grant a COA under the cumulative-error doctrine.

Mr. Eldridge claims that he is "essentially a mentally retarded person whose lawyer had conflicting loyalties to a *de facto* co-defendant [ostensibly, Loyd], [and his lawyer] failed to challenge his competency to stand trial in any meaningful manner, resulting in [his] standing trial while incompetent, trying to defend against allegations that were vague and indefinite, making it impossible for even a competent defendant to defend adequately." Aplt.'s Br. at 39–40.

### 1

"The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. The purpose of a cumulative error analysis is to address that possibility." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc); *accord Grant*, 886 F.3d at 954. "We cumulate error only upon a showing of at least two actual errors." *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015). Thus, if we "hav[e] found no error . . . , there is nothing to cumulate, and we deny th[e]

[cumulative-error] claim.". *Simpson v. Carpenter*, 912 F.3d 542, 604 n.43 (10th Cir. 2018).

**2**

The OCCA summarily rejected Mr. Eldrige's cumulative-error claim, stating that, "having found no error . . . there can be no error by accumulation." Aplt.'s App. at 35. Under the same rationale, the district court found the OCCA's decision was not contrary to, nor an unreasonable application of, clearly established Supreme Court law, concluding that "there were no constitutional errors to aggregate in this action, meaning there is no basis for a cumulative error analysis." *Id.* at 28.

In light of the foregoing analysis, we conclude that no reasonable jurist could debate the district court's resolution of this issue. As previously shown, the district court concluded that the OCCA's rejection of Mr. Eldridge's constitutional claims—without finding any error at all (as opposed to harmless error)—was not contrary to, nor an unreasonable application of, clearly established Supreme Court law, and Mr. Eldridge has failed to undermine those conclusions here. Therefore, there were no errors for the OCCA to accumulate, and no reasonable jurist could debate the district court's conclusion to this effect. Thus, we uphold the court's rejection of Mr. Eldridge's cumulative-error claim.

## III

For the foregoing reasons, we **DENY** Mr. Eldridge's application for a

COA and **DISMISS** this matter.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge